**Fedor I. NIKANOV, Plaintiff,**

v.

**SIMON & SCHUSTER, Inc., Margarita Madrigal and Sonia Bleeker, also known as Sonia Zin, Defendants.**

United States District Court
S. D. New York.
July 27, 1956.

Borris M. Komar, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Jay H. Topkis, Robert A. Low, New York City, of counsel), for defendants Simon & Schuster, Inc., and Margarita Madrigal.

**THOMAS F. MURPHY, District Judge.**

This is an action for copyright infringement and unfair competition arising from the publication of a book entitled, An Invitation to Russian.

The plaintiff, an American citizen of Russian birth, is an educator and for some time has been employed by the New York State Department of Education as a teacher of Russian. He is also managing director of the Language Guild, an institution which gives instructions in languages in the City of New York, and in 1943 plaintiff devised and copyrighted a unique plan or chart for teaching Russian to Americans.

Defendant Simon & Schuster, Inc. is a well-known New York publisher. Defendant Margarita Madrigal is an author of a book entitled, An Invitation to Spanish, previously published by defendant Simon & Schuster, and has described herself as a co-author of three other books also published by Simon & Schuster entitled—An Invitation to French; An Invitation to Portuguese and the book in question, An Invitation to Russian. Defendant Sonia Bleeker was a former employee of Simon & Schuster but has never been served with process and has not appeared.

The Russian language is phonetic and its alphabet has little or no resemblance to the alphabets of the English and Romance languages. It contains 31 letters and one sign. The article does not exist and each letter in every word is pronounced the same at all times with no exception.

In 1943 plaintiff secured a copyright on a large single sheet publication which on one side bore the legend, Russian Alphabet Guide, and on the other side, Russian Language Guide. There was uncontradicted testimony by a Russian expert and educator that in all his experience and reading of Russian grammars and text books he has never seen anything like plaintiff's copyrighted publication. It is unique because no one has ever devised a scheme for teaching the Russian alphabet to English speaking people in the manner plaintiff copyrighted. Basically, plaintiff's chart for teaching the Russian alphabet divides the Russian letters into three groups. Group 1: Those letters which look like Latin letters and are pronounced in a similar way; Group 2: Those letters which look like Latin letters but which are pronounced differently, and Group 3: Letters which do not look like Latin letters and are mostly of Greek origin. Each group is then learned by the use of cognates in the Russian language which sound and mean the same in both English and Russian. On the reverse side of the chart entitled, Russian Language Chart, plaintiff consolidated in chart form the mystery of Russian declension, conjugation and other matters of syntax.

Commencing in 1936 plaintiff had been working on a text book for the teaching

of Russian to American students and in 1942 he met defendant's employees, Sonia Bleeker and Wallace Brockway, who were interested on behalf of defendant Simon & Schuster in publishing a primer to be authored by plaintiff which would teach Americans how to speak Russian.

Sonia Bleeker was born in Russia and according to the dust jacket on the book, An Invitation to Russian, she was "dragged through most of the countries of Europe" before she attained the age of eight. Plaintiff testified that Bleeker spoke Russian "after a fashion" and that at one time she was a student of his.

After Simon & Schuster expressed interest in plaintiff authoring a book for it the parties entered into a lengthy correspondence over a period of years, from which it is evident that plaintiff and defendant Simon & Schuster were cooperating with each other in the preparation of a manuscript. It shows conclusively that defendants had in their possession plaintiff's copyrighted chart and his manuscript; that many conferences were held and criticisms made and exchanged, and an agreement made to entitle the book, An Invitation to Russian. In any event, after having been in possession of all of plaintiff's material for a number of years defendant Simon & Schuster decided not to publish a book by plaintiff but entered into a contract with defendant Madrigal on January 15, 1946, to publish the disputed book, An Invitation to Russian. This contract identifies defendants Madrigal and Bleeker as co-authors and provides that the manuscript is to be similar in format to the other books in the "Invitation" series. Margarita Madrigal was born in Costa Rica and holds no collegiate degree, although she has had some college training. She can neither speak nor read Russian—not even simple sentences in her "own" book.

In April 1943 Simon & Schuster published An Invitation to Spanish, authored by defendant Madrigal; in September 1944 it published An Invitation to Portuguese, alleged to be authored by Madrigal and Henriqueta Chamberlin, and in October 1945, An Inivitation to French, also alleged to be authored by Margarita Madrigal and Pierre Launay. An Invitation to Russian was published in November 1949.

It was defendant Madrigal's testimony that the Portuguese and French books were authored by her with the aid of a co-author by the simple formula of adopting the format of An Invitation to Spanish and having the co-author, who was familiar with those languages, substitute those languages for the Spanish.

An examination of the three books— An Invitation to Spanish; An Invitation to Portuguese and An Invitation to French—indicates that a very similar format was used in each, including the illustrations, sentences and simple stories.

It was defendant Madrigal's testimony that the disputed book—An Invitation to Russian—was prepared the same way. In other words, using An Invitation to Spanish as a model she merely had Miss Bleeker substitute Russian for Spanish and she did not copy or use plaintiff's copyrighted chart or manuscript. The fallacy of this testimony is evident from a mere inspection of the published books and the very practical problem she and Miss Bleeker had in preparing An Invitation to Russian, which did not exist in the other Romance language books, viz., the alphabet. They avoided the problem and without any independent industry or research stole plaintiff's literary effort and copied not only his method but his form of expression and lists of cognate words.

Oddly enough, Sonia Bleeker did not testify for defendant. There was testimony that she was no longer employed but no testimony that she was unfriendly or unwilling to appear, or at least have her deposition taken. In short, defendant's defense is not "fair use" of plaintiff's material but the bold assertion that An Invitation to Russian was the work product of a lady who did not testify, and a lady who could neither speak nor write Russian. Proof of the piracy, if any was needed, is vividly portrayed by some simple drawings in An Invitation to Russian. A number of Russian letters

**378**

that are either of Greek origin or closely related thereto are both difficult to remember and some difficult to pronounce. Plaintiff devised a mnemonic drawing to solve this problem by over-drawing figures on the basic letter so as to help the student remember the letter and its pronunciation. For example:

Oddly enough these ten drawings from plaintiff's manuscript find their way into defendants' book. There are others.

Aside from the question of access, which has been abundantly proved, the list of similarities between plaintiff's chart and manuscript and the book in question presents another problem. Totalling them up percentage-wise they form a small percentage of defendants' book, probably less than 5% of the total printed matter, but without the alphabet scheme and the use of cognates and mnemonic drawings used by plaintiff the balance of the book would be meaningless. The first hurdle in teaching the Russian language is the alphabet and without that clearly understood the balance luxuriates in a riotous morass.

An analysis of An Invitation to Russian, in an attempt to ascertain the truth of the defense that the other "Invitation" books were used as a format, proves also that this is not so. Out of 44 chapters in the Russian book half have no corresponding chapters in the Spanish book and six have corresponding titles but different contents. In addition plaintiff has proved in conformity with a list furnished to counsel for defendants prior to trial, and marked at the trial as court's Exhibit A, a list of similarities copied from his chart and manuscript which comprises a substantial part of defendants' book.

■ Convinced as we are that defendants utilized the literary effort of plaintiff, the more serious problem is the law applicable to such plagiarism. Plaintiff alleges two causes of action. The first is based exclusively on his copyrighted chart and is brought pursuant to statutory authority, and no objection is made to the court's jurisdiction. The second cause of action has been described as one for unfair competition and is based on the copying of both the chart and an unpublished manuscript. There is no diversity of citizenship and the question that immediately arises, and one which the defendants press, is the court's jurisdiction to entertain it.

What plaintiff calls his unpublished manuscript is a collection of loose-leaf writings subdivided in paper folders subtitled chapters, the sum total of which is far from a coherent manuscript but rather an amalgamation of rought drafts, working papers, some completely in Russian, others partly in English, some typed, some in longhand, making it almost impossible for one not familiar with the Russian language to decipher it. In addition there is no proof of any unfair competition in a sense of passing off. Actually the second cause of action is based upon plaintiff's common-law right in an unpublished writing and his copyrighted chart, parts of which have been adopted by defendants in An Invitation to Russian. Is such a cause of action a claim for "unfair competition" so as to come within the statutory categorization permitting joinder of such claims with copyright claims? We hold it is a claim for "unfair competition." Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; International News Service v. Associated Press, 1918, 248 U.S. 215, 241, 242, 39 S.Ct. 68, 63 L.Ed. 211; Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 1950, 199 Misc. 786, 101 N.Y.S.2d 483, affirmed 1st Dept. 1951, 279 App.Div. 632, 107 N.Y.S.2d 795.

■ Defendants argue that plaintiff's second cause of action is in effect a complaint that defendants have taken the Nikanov Method and to the extent that he owns a new "method" he owns nothing and when he accuses defendants of having stolen his "method" he accuses them of no wrong. Baker v. Selden, 1880, 101 U.S. 99, 25 L.Ed. 841; Guthrie v. Curlett, 2 Cir., 1929, 36 F.2d 694; Downes v. Culbertson, 1934, 153 Misc. 14, 275 N.Y. S. 233.

This argument over-simplifies the second cause of action. Actually plaintiff has alleged and proved in some detail that defendants have copied his expressions, examples, stories and diagrams. These are protected property rights. They are his expressions and writings and the result of his personal skill. The manu-

script was unpublished and in it he had a property right. Bobbs-Merrill Co. v. Straus, 1908, 210 U.S. 339, 346, 28 S.Ct. 722, 52 L.Ed. 1086.

■ However, the problem remains whether or not the court has jurisdiction over such a cause of action under Title 28 U.S.C. § 1338(b) which provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

In this connection much has been written since Hurn v. Oursler, supra, and the most recent interpretation may be found in Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 544 where Judge Waterman after reviewing the narrow and restricted view of this circuit of the pendent jurisdiction of the federal district courts over non-federal claims joined with substantial federal claims states: "Thus we are now committed to a broader view of pendent jurisdiction, at least in those cases involving a substantial federal question under the patent, copyright or trademark laws within 28 U.S.C.A. § 1338(b)." Accordingly, we hold that plaintiff's second cause of action is a claim for unfair competition and is properly before this court since it is joined with a substantially related claim under the copyright law.

■ With reference to plaintiff's first cause of action for copyright infringement, the evidence clearly indicates that defendants have copied without any independent industry a part of plaintiff's copyrighted chart. But is such copying a substantial part? We are convinced that the rule is not quantity but the quality of what was copied. What was copied principally was the scheme in plaintiff's own expressions of the alphabet and the cognate words he used to make the student better acquainted with the language

before any question of grammar or syntax could be learned.

In College Entrance Book Co. v. Amsco Book Co., 2 Cir., 1941, 119 F.2d 874, 876, the word lists copied constituted "only a small proportion" (less than 15% of the printed matter), nevertheless, the Court of Appeals said that it was *evident* that they are of real importance and entitled to copyright protection. In another district the copying of one line has been held an infringement. Henry Holt and Co., to Use of Felderman, Inc., v. Liggett & Myers Tobacco Co., D.C.Pa. 1938, 23 F.Supp. 302. See, too, Chicago Record-Herald Co. v. Tribune Ass'n, 7 Cir., 1921, 275 F. 797. In the instant case the percentage is less but what was copied was an integral part and of real importance to the book and unquestionably done to avoid the trouble and expense of independent work. West Pub. Co. v. Lawyers' Co-operative Pub. Co., 2 Cir., 1897, 79 F. 756; Lawrence v. Dana, C.C.1869, 15 Fed.Cas. page 26, No. 8136. In Oxford Book Co. v. College Entrance Book Co., 2 Cir., 1938, 98 F.2d 688, 691, although the Court of Appeals reversed on the question of infringement insofar as the text was concerned it nevertheless found that five illustrations were copied and ordered a decree for such infringement. In that case the copies were not Chinese copies as in the instant case but enough to convince the court of the copyright infringement.

■ We come now to the quantum of damages. Taking into consideration the $1,500 paid Madrigal and Bleeker as an advance for the "writing" of the book, plaintiff's income of approximately $800 a year from the sale of his chart up to the date of publication of An Invitation to Russian and the 3,747 copies of the book that were sold at a loss, I find that plaintiff has been damaged in the sum of $5,000, which sum "appears to be just", together with costs and a reasonable attorney's fee, which I fix at $1,000, the modest sum requested.

Decree accordingly.