Fedor I. NIKANOV, Plaintiff-Appellee,

v.

SIMON & SCHUSTER, Inc. and Margarita Madrigal, Defendants-Appellants,

and

Sonia Bleeker, also known as Sonia Zim, Defendant.

No. 263, Docket 24328.

United States Court of Appeals Second Circuit.

Argued March 11, 1957.

Decided July 2, 1957.

Borris M. Komar, New York City, for plaintiff-appellee.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Jay H. Topkis, New York City, of counsel), for defendants-appellants.

Before HINCKS, STEWART and LUMBARD, Circuit Judges.

STEWART, Circuit Judge.

In 1949 Simon & Schuster, Inc., published "Invitation to Russian," a language primer offered to the public as "a gay and simple guide to the reading and speaking of modern Russian." Margarita Madrigal and Sonia Bleeker were credited with authorship of the volume. The plaintiff brought this action against the publisher and the two authors, alleging that in producing and publishing the book they had infringed his copyright in a Russian language chart and had been guilty of unfair competition in plagiarizing teaching methods and material from the chart and from an uncopyrighted and unpublished manuscript of which he was the author. Sonia Bleeker was not served with process and did not appear. The district court entered judgment for damages against the two other defendants. On this appeal they contend that the evidence was insufficient to sustain the claim of copyright infringement or unfair competition with respect to the chart, and that the district court was without jurisdiction of the claim of unfair competition with respect to the unpublished manuscript. There is no dispute about the facts.

The plaintiff, an American citizen of Russian birth, is a professional teacher of foreign languages. In 1943 he secured a copyright on a single sheet publication, printed on both sides. One side bore the title "Russian Alphabet Guide" and the other "Russian Language Chart."

The Russian alphabet consists of thirty-one letters and one sign; it bears only partial and superficial resemblance to the familiar Latin alphabet. Thus an English-speaking student who wants to learn Russian encounters at the outset. a formidable hurdle. Unlike a student of the Romance languages, he must master

a new alphabet before he can even begin to learn vocabulary or syntax.

The plaintiff's copyrighted chart incorporated a method he had devised to teach the Russian alphabet to English-speaking students. This method consisted of dividing the letters of the Russian alphabet into three groups: those letters which both look and sound like Latin letters; those which look like Latin letters but are pronounced differently; and those, mostly derived from the Greek, which neither look nor sound like Latin letters. Pronunciation was illustrated by the use of cognate words which mean and sound the same in both Russian and English. This arrangement of the alphabet was concededly unique. The plaintiff sold the copyrighted charts to the public from 1943 to 1949 with a modicum of financial success, realizing an average annual profit of between seven and eight hundred dollars.

In 1943 the plaintiff was approached by representatives of the defendant, Simon & Schuster, Inc., with the suggestion that he write a Russian language textbook to be published by that firm. He agreed, and the publishing company assigned one of its employees with some knowledge of Russian, the defendant Sonia Bleeker, to work with him in preparing and editing the manuscript. The plaintiff made his copyrighted chart available to Bleeker, and she pointed out that it could serve as the foundation for the proposed book.[1]

During the course of the following two years the plaintiff was in frequent communication with Bleeker. He produced a rough manuscript which was submitted through Bleeker to Simon & Schuster, Inc. Early in 1946 the publisher returned the manuscript to the plaintiff, informing him that it was unsuitable for publication.

In the meantime, Simon & Schuster, Inc., had published three commercially successful language primers, "Invitation to Spanish," "Invitation to Portuguese," and "Invitation to French." The defendant Madrigal was the coauthor of each of them. Sometime in 1945, while the publisher had possession of both plaintiff's language chart and his manuscript, it made arrangements with Madrigal to turn out a Russian primer. Since Madrigal knew no Russian, Bleeker was assigned to work with her as translator and coauthor. Written contracts were signed on January 15, 1946, and "Invitation to Russian" appeared three years later.

The first three chapters of "Invitation to Russian" present the Russian alphabet in the same three groups as does the plaintiff's copyrighted chart. The book also illustrates pronunciation by the use of cognate words, many of which are the same cognates appearing on the chart. In adddition the book contains mnemonic drawings of Russian letters in the third category which are the same as the drawings in the plaintiff's unpublished manuscript.

Judge Murphy found that Madrigal and Bleeker "without any independent industry or research stole plaintiff's literary effort and copied not only his method but his form of expression and lists of cognate words." [144 F.Supp. 377.] With specific reference to the cause of action for infringement of the copyrighted chart, Judge Murphy found that, "What was copied principally was the scheme in plaintiff's own expressions of the alphabet and the cognate words he used to make the student better acquainted with the language before any question of grammar or syntax could be learned." He pointed out that while the material copied amounted to a relatively small portion of the total text of "Invitation to Russian," it constituted a much larger portion of the copyrighted chart. He also emphasized that "what was

---

1. In a letter of April 9, 1943, to the plaintiff, Bleeker wrote: "Since you plan to begin the book with 'Learning the Russian Alphabet,' and you already have the chart in black and white, and all you have to do is break up the chart into chapters, before you know it—one thing will lead to another and you will have a substantial part of the manuscript."

copied was an integral part and of real importance to the book, and unquestionably done to avoid the trouble and expense of independent work." Damages were assessed at $5,000, together with an attorney's fee.

■■ In our view the court's findings and conclusions with respect to copyright infringement were correct. The evidence of similarity and access clearly permitted the court's basic inference of copying. General Drafting Co. v. Andrews, 2 Cir., 1930, 37 F.2d 54, 56; Encyclopaedia Britannica Co. v. American Newspaper Ass'n, C.C.D.N.J.1904, 130 F. 460, 464, affirmed Werner Co. v. Encyclopaedia Britannica Co., 3 Cir., 1905, 134 F. 831. See Shipman v. R. K. O. Radio Pictures, 2 Cir., 1938, 100 F.2d 533, 537. This inference the appellants failed to dispel. Madrigal knew no Russian, "not even simple sentences in her 'own' book," and Bleeker did not testify. Moreover, these portions of "Invitation to Russian" were without counterpart in Madrigal's other language books. The insubstantial differences in arrangement of the three categories of Russian letters in the chart and in the book fell short of showing original independent effort on the part of the book's authors. Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 1934, 73 F.2d 276. As this court has stated, "It is of course essential to any protection of literary property, whether at common-law or under the statute, that the right cannot be limited literally to the text, else a plagiarist would escape by immaterial variations." Nichols v. Universal Pictures Corporation, 2 Cir., 1930, 45 F.2d 119, 121. While only a part of the plaintiff's copyrighted work was appropriated, what was taken was clearly material, as the district court found. College Entrance Book Co. v. Amsco Book Co., 2 Cir., 1941, 119 F.2d 874.

■ The appellants contend, however, that even accepting the district court's findings of copying, the court was wrong as a matter of law, because all that was taken was an idea, and an idea cannot be the subject of copyright protection. Baker v. Selden, 1879, 101 U.S. 99, 25 L.Ed. 841; Brief English Systems v. Owen, 2 Cir., 1931, 48 F.2d 555; Guthrie v. Curlett, 2 Cir., 1929, 36 F.2d 694. But more than a mere idea was appropriated here. "Invitation to Russian" copied the plaintiff's expression of the idea, in arrangement, order of presentation and verbal illustration. What Madrigal and Bleeker evidently did was to follow the advice Bleeker had given the plaintiff himself in 1943—to "break up the chart into chapters." This case is perhaps close to the borderline, but no closer than many others in which copyright protection has been afforded. College Entrance Book Co. v. Amsco Book Co., supra; Deutsch v. Arnold, 2 Cir., 1938, 98 F.2d 686; Nutt v. National Institute, Inc. for the Improvement of Memory, 2 Cir., 1929, 31 F.2d 236; Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 1932, 61 F.2d 131; Adventures in Good Eating v. Best Places to Eat, 7 Cir., 1942, 131 F.2d 809.

■ The court awarded damages of $5,000, the maximum statutory amount, 17 U.S.C.A. § 101(b). Despite the fact that "Invitation to Russian" was not itself a profitable publication, the award was clearly just in view of the abrupt drop in sales of the plaintiff's chart and the authors' fee paid to Madrigal and Bleeker.

■ The award of damages was based wholly on the plaintiff's cause of action for copyright infringement. We have concluded that on that phase of the case the district court's decision was correct. Whether or not the court had pendent jurisdiction of the claim of unfair competition with respect to the plaintiff's uncopyrighted manuscript is a question we therefore need not pursue.[2]

The judgment is affirmed.

2. The statute confers upon the district court "jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." 28 U.S.C.A. § 1338

(b). Clearly the plaintiff asserted "a claim of unfair competition." International News Service v. Associated Press, 1918, 248 U.S. 215, 39 S.Ct. 68, 63 L. Ed. 211; Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp., 1950, 199 Misc. 786, 101 N.Y.S.2d 483, affirmed 1st Dept. 1951, 279 App.Div. 632, 107 N. Y.S.2d 795. Clearly the claim under the copyright laws with which it was joined was "substantial." Thus the only question is whether the two claims were "related."

If the statute is but a codification of the rule of Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, the answer must clearly be that the two claims were not "related," and that the district court was therefore without jurisdiction of the claim of unfair competition. In that case the plaintiff sued for infringement of the copyright on a play, for unfair competition with the copyrighted play, and for unfair competition with a revised, uncopyrighted version of the same play. The Supreme Court held there was pendent jurisdiction of the unfair competition claim so far as it related to the copyrighted play, but not of the claim based upon the uncopyrighted version.

It has been said, however, that the statute goes much further than Hurn v. Oursler and must be broadly construed to include claims which have "a real factual or legal relation" to the copyright claim in order to "carry out the revisers intention 'to avoid "piecemeal" litigation.' " Moore, Commentary on the Judicial Code, page 150. Such a construction would lead to the conclusion that the district court did have jurisdiction here. The parties were identical, much of the evidence bore on both claims, and "Invitation to Russian" was the tortious instrument under both claims.

This court has taken an increasingly liberal view of the statute, but apparently has not explicitly held that it goes beyond Hurn v. Oursler. Maternally Yours, Inc., v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538, 543–544. Perhaps that is what was implicitly announced, however, in Telechron, Inc., v. Parissi, 2 Cir., 1952, 197 F.2d 757, 759–761 and Schreyer v. Casco Products Corp., 2 Cir., 1951, 190 F.2d 921, 923–924, certiorari denied 1952, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683. For a discussion of this aspect of the present case, including possible Constitutional overtones, see Note, 70 Harv.L.Rev. 1469 (1957).