## John P. Hopkin and Jane A. Hopkin v. Charles T. Goetz

[326 A.2d 12]

No. 120-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed October 1, 1974

*McNamara, Fitzpatrick, Sylvester, Farrell & Maley,* Burlington, for Plaintiffs.

*Ewing & Spokes,* Burlington, for Defendant.

**Smith, J.** This is an action for conversion of personal property brought by the plaintiffs, John and Jane Hopkin, against defendant Charles Goetz, their former landlord. The cause was heard by the Chittenden County Court on March 28, 1973. On May 7, 1973, findings of fact were filed by the Chittenden County Court, and on May 17, 1973, a judgment order was issued by said court granting judgment to the plaintiffs and awarding damages against the defendant in the amount of $6,375.50 and costs.

The defendant has duly taken his appeal to this Court and here asserts that the conclusion of law of the lower court that the property had been converted and its subsequent assessment of damages are not supported by the findings of fact. The factual findings themselves are unchallenged, are therefore conclusive, and the case is controlled by the facts found. *Stonewall Insurance Co.* v. *Moorby*, 130 Vt. 562, 568, 298 A.2d 826 (1972).

On July 5, 1964, the plaintiffs rented an apartment at the Park Hill Apartments in South Burlington, Vermont, from the Green Mountain Real Estate Corporation. Mrs. Hopkin signed a "Monthly Rental Contract and Inventory", which was introduced into the case as an exhibit by the defendant. In 1967, the Green Mountain Real Estate Corporation sold these apartments to the defendant, who was the principal stockholder in the corporation. No request was made by the defendant that the plaintiffs sign a new contract.

On February 22, 1969, the defendant sent a letter to the plaintiffs which reads as follows:

> Dear Mr. and Mrs. Hopkin: I am enclosing two of Mr. Viens' checks, which were covered by a cash payment representing rent to your apartment to March 6, 1969.
>
> Because of this peculiar situation, I must insist that your future rents be in my hand by the date due in the form of cash or money order. If for any reason you will be unable to do this, please contact me at once. Beginning March 6, 1969, I have no choice but to issue and enforce eviction notices for late rent. I will not rescind or alter any future notices no matter how imminent payment may be. Very truly yours, Charles T. Goetz.

On March 6, 1969, the plaintiffs failed to pay the rent, in the sum of $145.00. On the next day the defendant's manager of the apartment building placed a notice under the door to the plaintiffs' apartment entitled "3-Day Notice to Pay Rent or Vacate Premises". Nothing in the notice indicated that the defendant would take possession of plaintiffs' property if they failed to make payment.

The plaintiffs not having paid the rent within the three-day period, the defendant, through his manager, on March 11, 1969, took possession of the apartment and padlocked the door.

All of the contents were removed, and the plaintiffs were not allowed to enter the apartment.

Mrs. Hopkin attempted to negotiate with the defendant for the return of her personal property. He agreed to release this property for $75.00, but a check to him from the plaintiff in that amount was returned by the bank because of insufficient funds.

Mrs. Hopkin again contacted the defendant in September but was told by him that his apartment manager had sold some of the plaintiffs' property and had removed the rest to the dump. No notice was ever given the plaintiffs by the defendant of his intention to sell or dispose of their property. Defendant testified that he received the sum of $38.00 for this property, which he applied toward rent and storage fees.

The plaintiffs introduced into evidence an itemized list of the personal property which had been in the apartment at the time they were locked out by the defendant. Mrs. Hopkin testified that at the time the property was removed its total value was in excess of $7,000.00.

The first claim of the defendant is that the plaintiffs did not establish a clear demand for the disputed property and an unqualified refusal to release it, a method of proving a conversion, *Peck* v. *Patterson,* 119 Vt. 280, 282, 125 A.2d 813 (1955), other than by establishing an overt unlawful act with regard to the property. *Economou* v. *Carpenter,* 124 Vt. 451, 454, 207 A.2d 241 (1965).

The record below makes it clear that the plaintiffs attempted at various times to negotiate for the return of their property. While one such attempt failed when plaintiffs' check failed to clear the bank, the lower court found that the plaintiffs never abandoned their property. They did not give up their efforts to recover their property until they learned in September of 1969 that the defendant had sold or dumped it. Moreover, defendant at trial unequivocally answered the question of whether he refused to give the plaintiffs their personal property, "Yes, I did."

In addition to this legally sufficient demand and refusal, there was no legal basis for the defendant's re-entering the premises, padlocking the door against the entry of the plaintiffs, and later selling or disposing of the property. This

conduct was not authorized under any agreement between the plaintiffs and the defendant. The original lease between the plaintiffs and the Green Mountain Real Estate Corporation, offered as an exhibit by the defendant, contained no provision for re-entry for nonpayment of rent unless the lessees had abandoned the premises, which was not the case here. Furthermore, there is no record before us that the above-mentioned lease, whatever its terms, was ever assigned to this defendant.

■ "Conversion consists in either appropriating property to one's own use and beneficial enjoyment, destroying or exercising dominion over it to the exclusion of owner's rights, or withholding possession from owner under claim of title inconsistent with his title." *Redd Distributing Co., Inc.* v. *Bruckner,* 128 Vt. 635, 639, 270 A.2d 580 (1970). The record amply supports the lower court's conclusions of law that a four or five day arrearage on rent in no way justified the conduct of the defendant in taking the property of the plaintiffs without notice and that the defendant unlawfully converted such property.

Defendant has also briefed a contention that the damages were assessed arbitrarily and include a tacit award of exemplary, as well as compensatory, damages.

■ As we have before mentioned, the plaintiffs introduced into evidence a very itemized list of their personal property, containing the value of each listed item, totaling in excess of $7,000.00. It is true that the valuations were made by Mrs. Hopkin based on her own judgment, rather than on any impartial appraisal. However, no rebuttal of the estimated values was placed in evidence by the defendant. No claim was made by the plaintiffs for exemplary damages.

Moreover, 12 V.S.A. § 1604 provides, "The owner of real or personal property shall be a competent witness to testify as to the value thereof." *Keene* v. *Willis,* 128 Vt. 187, 190, 260 A.2d 371 (1969). The lower court's award of damages in the amount of $5,000.00, together with interest from the time of conversion to judgment, was within the range of the evidence, and we find no error.

*Judgment affirmed.*