## David Vreeland v. Essex Lock and Manufacturing Company, Inc.

[370 A.2d 1294]

No. 148-75

Present: Barney, C.J., Billings, J., Shangraw, C.J. (Ret.),
Keyser, J. (Ret.), and Hill, Chief Supr. J., Specially Assigned

Opinion Filed December 21, 1976

*John A. Burgess Associates, Ltd.*, Montpelier, for Plaintiff.

*Thomas F. Heilmann* of *Richard E. Davis Associates, Inc.*, Barre, for Defendant.

**Barney, C.J.** Two cases were consolidated for trial below and heard together in this Court. The cases involved employer-employee relations between the Essex Lock and Manufacturing Company, Inc. and David Vreeland. Vreeland, in his action, sought damages from Essex Lock for breach of the employment contract. The Essex Lock Company sued Vreeland for conversion and malicious interference with its business. The lower court dismissed Vreeland's action on the merits and awarded damages to Essex Lock. This appeal followed.

Vreeland, after working as a consultant, was employed by Essex Lock in 1970 as general manager. His contract allowed him to engage in outside activities on condition that such activities did not conflict with his duties. He also bound himself to turn over to the company as its property any inventions or discoveries relating to the manufacturing processes of the company.

While employed by Essex Lock, Vreeland made application for, and received, a Federal license authorizing him to manufacture and sell firearms. He did not inform the company of this action, nor was the license necessary to the performance of his duties. He also invoiced to himself a great many receivers, most of second quality, which means they had repairable defects. These he sold to customers of Essex Lock and did not reimburse his employer. In addition, there were some first quality receivers sold and some thousands of bushings. The total value amounted to more than twelve thousand dollars.

When these facts came to light, Vreeland was discharged. He brought suit seeking an accounting for severance pay and moneys claimed to have been expended by him on the company's behalf. He also sought to recover the value of a 15% nonassignable stock option that was in his employment contract. The company denied any indebtedness or obligation running to Vreeland, and brought its own suit to recover the value of what

Vreeland had sold, plus damages for malicious interference with its business. The only attempt by Vreeland to exercise his stock option was an offer to buy two shares. This offer, which elicited no responses, was made sometime in May 1971, well before his discharge in September of that year.

Vreeland requests that we vacate both judgments entered below. In the portion of this case which was initiated as *Vreeland* v. *Essex Lock and Manufacturing Co.*, he asks for a hearing on damages due him for loss of salary on his employment contract, and he asks for a decree of specific performance ordering Essex to comply with its alleged contractual obligation to sell him capital stock.

■ In his argument concerning loss of salary, Vreeland asserts that the court below erred as a matter of law in two respects. First, he claims that the lower court erred in concluding that his action constituted a conversion of his employer's property. As we stated in *Hopkin* v. *Goetz*, 132 Vt. 581, 584, 326 A.2d 12, 14 (1974):

> Conversion consists in either appropriating property to one's own use and beneficial enjoyment, destroying or exercising dominion over it to the exclusion of owner's rights, or withholding possession from owner under claim of title inconsistent with his title.

Vreeland argues that his inherent discretion as general manager, when taken together with the fact that he had invoiced the goods in question to himself, should preclude a finding of conversion. We disagree.

■ The uncontroverted findings of fact are that Vreeland was without authority to invoice the goods to himself, that he sold many of them without authority, that these sales were made in his own behalf, that he never paid his employer for them, and that he never informed any officer of the company or member of the board of directors of his actions.

■ Misapplication of law to unchallenged findings is indeed subject to corrective appellate review. *Bolduc* v. *Coffin*, 133 Vt. 67, 329 A.2d 655 (1974). However, conclusions of law will only fail to stand where they are inconsistent with the underlying facts found. *Central Cab, Inc.* v. *Ironside*, 126 Vt. 356, 230 A.2d 790

(1967). The lower court's conclusion that conversion did occur is certainly consistent with the uncontested facts evidencing a wrongful sale. See *Mason* v. *Sault*, 93 Vt. 412, 108 A. 267 (1919).

 Vreeland also claims that the lower court erred in its conclusion of law that his actions constituted a breach of contract. He maintains that his actions were within the ambit of discretion permitted him and that they were not disloyal to his employer. Regarding the scope of Vreeland's discretion, the lower court's Finding No. 3 reads, in part:

> The contract permitted the plaintiff (Vreeland) to engage in outside activities on the condition that such activities did not conflict with his duties at Essex Lock . . . .

Finding No. 14 states that:

> [t]he third parties to whom Plaintiff (Vreeland) sold these items were, at the times of the sales, customers of the Defendant (Essex Lock).

As noted above, other findings indicate that the sales were not authorized and that they were made on behalf of Vreeland himself as seller.

Again, the test must be whether or not the conclusions of law were consistent with the underlying facts found. *Central Cab, Inc.* v. *Ironside, supra*. The court's conclusion that Vreeland's outside activities conflicted with his duties to his employer in violation of their contract is consistent with the above findings. The court's conclusion of law that Vreeland also breached his contract by breaching his duty of loyalty, trust and honesty to his employer is also consistent with these same findings.

Our affirmance of the lower court's conclusions that Vreeland was guilty of conversion and that he breached his contract precludes the need to offer him equitable relief in the form of ordering Essex to specifically perform their asserted obligation to sell 15% of their stock to Vreeland.

 In the portion of this case which was initiated as *Essex Lock and Manufacturing Co.* v. *Vreeland*, error is claimed in the violation of the so-called "best evidence" rule. Because of this violation, Vreeland requests that the cause be remanded to the lower court to correct the judgment.

During direct examination of Essex Lock's Assistant Treasurer, he was asked if the corporation had a list of prices for its receivers (one of the components at issue). Following an affirmative response, he was asked for the price at which certain receivers were offered for sale. Over Vreeland's objection, the testimony was admitted.

Vreeland argues that the contents of the price list were at issue and that since its unavailability had not been explained, the oral evidence as to price should have been excluded. Accordingly, damages due the company should be measured by the only properly admitted evidence in the record as to the value of the items, the evidence from the invoices themselves.

The fact that particular information may be contained on a particular list does not aloné require that list to be introduced before presenting that information.

As we stated in *Don Lloyd Builders, Inc.* v. *Paltrow*, 133 Vt. 79, 330 A.2d 82 (1974), the rule is not intended as an exclusionary one; it is merely a rule of preference operating as a special exception to the rules of testimonial preference. Oral evidence is not thereby precluded. Here the accuracy of the prices did not depend upon the existence of the particular list in question; the proffered evidence was not aimed at the contents of the document itself, *Lavalette* v. *Noyes*, 124 Vt. 353, 205 A.2d 413 (1964); the list did not define the obligations of the parties, *Don Lloyd Builders, Inc.* v. *Paltrow, supra*; the evidence was properly admitted.

*Both judgments reached below are affirmed.*