### O'Bryan Construction Company, Inc. v. Boise Cascade Corporation

[424 A.2d 244]

No. 369-79

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed October 16, 1980

82

*Philip R. Rosi* and *Potter Stewart, Jr.,* of *Kristensen, Cummings, Rosi & Murtha,* Brattleboro, for Plaintiff.

*Kenneth V. Fisher, Jr.,* Brattleboro, for Defendant.

**Daley, J.** The plaintiff, O'Bryan Construction Company, Inc., is a general contracting firm which, over more than a decade, has developed a commercial course of dealing with the defendant, Boise Cascade Corporation. At the defendant's request, the plaintiff would design buildings for the defendant's commercial complex and, after modification and refinement, build them. In late June, 1976, one of defendant's managers, Klaver, contacted plaintiff's president and sole stockholder, O'Bryan, and requested that he begin designing a new structure in accordance with certain general specifications. Over the next fifteen months, there were frequent meetings and phone calls between the parties to refine the plans and to solve a variety of problems which arose. Over this period, plaintiff submitted quotations and developed plans which detailed the site, foundation and building design of the proposed structure.

Despite the parties' long established course of dealing and without notifying the plaintiff, the defendant decided to seek competitive bids on the project in early July, 1977. Nonetheless, sometime in August Klaver called O'Bryan and requested fourteen sets of the plans for use in arranging financing with

defendant's home office and to obtain Act 250 (10 V.S.A. §§ 6001–6091) and other necessary permits. Although not specifically told that he had the job, O'Bryan assumed that the defendant was ⬛hering to their prior course of dealing. Klaver had asked ⬛ut a particular foreman whom he had liked in the past and ⬛therwise gave the impression that the plaintiff was to con⬛uct the building. Furthermore, O'Bryan knew that when particular plans are used to obtain an Act 250 permit, the validity of the permit is conditioned on the use of the same plans in actual construction. O'Bryan testified that he would not have submitted the plans had he not been sure that he had the job.

In late October or early November, 1977, the defendant informed the plaintiff that the contract had been awarded to another general contractor. Plaintiff immediately demanded that the plans be returned to it. O'Bryan informed Klaver that he was going to bring suit. Klaver consulted a professional engineer for an evaluation of the plaintiff's product and sent the plaintiff a check in the sum of $1470. This check was refused and returned to the defendant. The plans were then returned to the plaintiff. In the meantime, the Act 250 permit had been issued.

The plaintiff then brought a civil action alleging infringement of common law copyright, conversion and quantum meruit. The cause was tried by jury. At the close of the plaintiff's case, the defendant moved for a directed verdict on all counts. In its order granting the defendant's motion, the trial court specifically found that the drawings submitted did, in fact, carry a common law copyright. It stated, however, that as a matter of law, there was no competent evidence from which a jury could reasonably determine that there was a publication without the consent of the plaintiff. It also ruled that the absence of any competent evidence of fraudulent misrepresentation barred recovery on the conversion claim. Finally, the court found that although a prima facie showing of an implied-in-law contract had been made out, the absence of competent evidence as to the reasonable value of the services precluded recovery. The plaintiff appeals.

⬛ Architectural plans containing some substantial originality of their author are protected by the common law

copyright. *Nucor Corp.* v. *Tennessee Forging Steel Service, Inc.,* 476 F.2d 386, 389–90 (8th Cir. 1973); *Ketcham* v. *New York World's Fair 1939, Inc.,* 34 F. Supp. 657 (E.D.N.Y. 1940), *aff'd,* 119 F.2d 422 (2d Cir. 1941) (mem.). The doctrine of common law copyright, recognized here for the first time in this state, is severely limited, however, by the fact that the Copyright Act of 1976 pre-empts nearly the entire field. 17 U.S.C. § 301 (Supp. III 1979); see 1 Nimmer on Copyright §§ 1.01[B][3] and 2.02 (1980). Nonetheless, because this controversy arose prior to January 1, 1978, the common law doctrine applies. 17 U.S.C. § 301(b)(2) (Supp. III 1979).

■■ The owner of a common law copyright is entitled to protection until the copyright is lost through general publication of the plans. See *Schwartz* v. *Broadcast Music, Inc.,* 180 F. Supp. 322, 328 (S.D.N.Y. 1959). Upon general publication, the common law copyright is terminated. *National Comics Publications, Inc.* v. *Fawcett Publications, Inc.,* 191 F.2d 594, 598 (2d Cir. 1951). Since the trial court ruled that the plans were protected by common law copyright, it must therefore have concluded that the distribution by the plaintiff of the fourteen copies amounted only to a limited publication, one not sufficiently general to result in a loss of common law rights. See generally 1 Nimmer, *supra,* §§ 2.02, at 2–17 and 4.13[A], at 4–65. Thus, the directed verdict on the first count was based only on the insufficiency of the evidence presented in support of the issue of infringement. In reviewing a grant of a directed verdict, the evidence must be viewed in the light most favorable to the plaintiff. If there is any substantial evidence reasonably tending to support the plaintiff's claim, the directed verdict is improper. *Condosta* v. *Condosta,* 137 Vt. 35, 38, 401 A.2d 897, 899 (1979). The issue on appeal is thus whether there was substantial evidence reasonably tending to support the plaintiff's claim in this regard.

■ The element of infringement can be shown either by unauthorized public distribution or unauthorized copying. 3 Nimmer, *supra,* § 13.01. Furthermore, an infringement is triggered if a material and substantial part of the protected

document is copied even though it constitutes only a small part of the entire package. *Nucor Corp.* v. *Tennessee Forging Steel Service, Inc., supra,* 476 F.2d at 391; *Nikanov* v. *Simon & Schuster, Inc.,* 246 F.2d 501, 504 (2d Cir. 1957). Although the court was correct that the evidence does not raise a jury question as to unauthorized public distribution of the plans, it failed to address the question of copying. Because direct evidence of copying is rarely available, a permissive inference of "copying is ordinarily established indirectly, by the plaintiff's proof of *access* and *substantial similarity.*" 3 Nimmer, *supra,* § 13.01[B] (emphasis added); *id.* § 12.11[D], at 12-82 to 12-83. Here, there is no question that the defendant had access to the plans. The defendant even admitted showing the plaintiff's plans to the contractor who was awarded the job. On the issue of substantial similarity, O'Bryan, a district environmental coordinator and an architect testified to both general and specific similarities between plaintiff's plans, the plans later used and the building eventually built. Furthermore, according to a letter from the district environmental commission, an amendment to the Act 250 permit was not required after the new contractor's plans were substituted for plaintiff's plans, because the substituted plans did "not deviate substantially from those previously submitted." On this state of the evidence, a jury question was raised as to copying. It was therefore error to direct a verdict on the common law copyright count.

■ The pleading of the conversion claim unnecessarily complicated the issue by alleging, *inter alia,* fraudulent misrepresentation of ownership. Under existing Vermont law, however, plaintiff need not prove fraud in order to make out a claim for conversion. "Conversion consists in either appropriating property to one's own use and beneficial enjoyment, destroying or exercising dominion over it to the exclusion of owner's rights, or withholding possession from owner under claim of title inconsistent with his title." *Redd Distributing Co.* v. *Bruckner,* 128 Vt. 635, 639, 270 A.2d 580, 583 (1970); accord, *Vreeland* v. *Essex Lock & Manufacturing Co.,* 135 Vt. 1, 3, 370 A.2d 1294, 1295–96 (1976); *Hopkin* v. *Goetz,* 132 Vt. 581, 584, 326 A.2d 12, 14 (1974). The trial court thus erred in directing a verdict on the theory that there had been no fraudulent misrepresentation of ownership.

■ We find that a jury question was raised on the issue of conversion. Klaver testified on direct examination that this was the first time his company had sought competitive bids for a project in which O'Bryan was involved. The decision to do so was made by Klaver and his superiors, none of whom sought plaintiff's permission for this admitted departure from past practice. While it is true that the use of property with the consent of the owner does not constitute conversion, see *Norriton East Realty Corp.* v. *Central-Penn National Bank,* 435 Pa. 57, 60–61, 254 A.2d 637, 638–39 (1969); Restatement (Second) of Torts § 252 (1965), here there was evidence that defendant went beyond the scope of its authority by showing plaintiff's plans to the competing general contractor who eventually was awarded the contract. The use of property in a manner beyond the consent conferred constitutes an appropriation of property to one's own use and can form the basis of a conversion. See *Vermont Acceptance Corp.* v. *Wiltshire,* 103 Vt. 219, 225–27, 153 A. 199, 202–03 (1931); Restatement (Second) of Torts § 252, Comment c.

It is important to note the way in which the doctrines of common law copyright and conversion interrelate in this context. Professor Nimmer cautions that "[a]n action for common law copyright infringement should not be confused with an action for conversion. . . . [C]onversion will lie for wrongful possession of the tangible embodiment of a work (*e.g.,* a manuscript), while a copyright action must be brought for wrongful use of the intangible literary property contained therein." 2 Nimmer, *supra,* § 8.23, at 8-272.7 n.1. The plaintiff could thus potentially make out a prima facie case for both causes of action and recover on both. The respective damage awards are meant to compensate different wrongs, however, and care must be taken to avoid a duplicitous recovery. If a jury were to find that a conversion had taken place, the recovery would be limited to the value of the paper itself. The damage for the theft of the ideas themselves would instead fall under the caption of the copyright infringement, should one be found. Thus, although the evidence presented on the issue of conversion was sufficient to survive a motion for a directed verdict, the potential recovery of compensatory damages is logically limited by the facts.

Lastly, plaintiff argues that it was error to direct a verdict against it on the quantum meruit claim. The reason given by the trial court for doing so was that no competent evidence of damages was available to the jury. We cannot uphold this ruling for two reasons. First, it is apparent from the record that evidence of an offer of $1470 was introduced. This in itself is evidence of the value of the plans justifying submission of the claim to the jury. Second, the reason no further evidence of value was introduced is that all other evidence offered on this issue was erroneously excluded by the trial court.

On a claim for quantum meruit, plaintiff is entitled to recover the fair and reasonable value of his services. *Whitney* v. *Lea,* 134 Vt. 591, 594, 367 A.2d 683, 685 (1976). Two witnesses attempted to give their opinion on this issue. First, O'Bryan, both as an expert in this area and as an agent of the owner of the plans within the meaning of 12 V.S.A. § 1604, attempted to testify as to their value. Section 1604 states that "[t]he owner of real or personal property shall be a competent witness to testify as to the value thereof." The court ruled that because O'Bryan was not an architect he was not competent to give an expert opinion as to the value of the plans. Furthermore, because the plaintiff corporation is the legal owner of the plans, the court ruled that § 1604 does not empower O'Bryan to testify as to their value.

It is well established that the competency of an expert witness is, in the first instance, within the trial court's discretion and that the trial court's ruling will not be disturbed on appeal unless it appears from the evidence to be erroneous or founded upon an error of law. See, e.g., *South Burlington School District* v. *Calcagni-Frazier-Zajchowski Architects, Inc.,* 138 Vt. 33, 50, 410 A.2d 1359, 1367 (1980). Such an error is present in this case. We have recently stated that skill, knowledge or experience are each adequate bases upon which to qualify an expert. *Northern Terminals, Inc.* v. *Smith Grocery & Variety, Inc.,* 138 Vt. 389, 392–93, 418 A.2d 22, 24 (1980). The mere fact that a witness lacks a particular professional certification is but one factor in the assessment of competency; the key question is always whether, in light of training or experience or both, the witness has expertise in

the area in question. See *id.* at 393, 418 A.2d at 24. The evidence of O'Bryan's many years of experience with building plans indicates that he does have such expertise, and the absence of formal certification does not undermine this conclusion.

Furthermore, even if O'Bryan were not an expert, we do not read § 1604 as narrowly as the trial court did. "[A] corporation can only act through its agents," *In re McGrath,* 138 Vt. 77, 80, 411 A.2d 1362, 1364 (1980), and therefore the trial court's construction of § 1604 would deny the statute's benefits to all corporations. We prefer a more sensible construction, which would allow a designated representative of a corporation to testify as to the value of corporate property once he has been shown to have a thorough familiarity with the property in question. See *New England Power Co.* v. *Town of Barnet,* 134 Vt. 498, 508, 367 A.2d 1363, 1370 (1976), where an employee of the plaintiff corporation in "a position of high corporate responsibility" was permitted to testify as to the value of corporate property with which he was thoroughly familiar. See also *Fiske* v. *State Highway Board,* 124 Vt. 87, 94–95, 197 A.2d 790, 794 (1964), for an analogous case involving testimony on the value of an unincorporated business by an owner who was proven to be entirely acquainted with the business conducted there. In the case at bar, O'Bryan was shown to be entirely familiar with the plans and with the day-to-day operation of the business. He should therefore have been allowed to testify on behalf of the corporation.

The second witness who attempted to testify as to the value of the services was an architect. The court apparently excluded his testimony because it was unsure whether an architect could give an opinion on the value of plans drafted by a nonarchitect. This question is adequately covered by the principles discussed above; if the witness has expertise in the given area, professional certification is immaterial. 12 V.S.A. § 1643 provides the procedural vehicle for limiting the admissibility of such testimony. It permits the witness to state his opinion without specifying the data upon which it is based. This data can be elicited through subsequent direct, cross, or redirect examination. *Id.* Should the underlying data fail to

provide a sufficient foundation, the testimony "is properly challenged by a subsequent motion to strike." *Bean* v. *Sears, Roebuck & Co.*, 129 Vt. 278, 281, 276 A.2d 613, 615 (1971).

*Reversed and remanded.*