### Robert C. Williams v. Chittenden Trust Company, William A. Murphy, Sugar River Company, Battleground Associates, Carl Garbelotti, Robert Whittemore, and Schleicher-Soper Architects

[484 A.2d 911]

No. 149-81

Present: **Billings, C.J., Hill, Underwood and Peck, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed August 31, 1984

Motion for Reargument Denied November 7, 1984

78

*Keyser, Crowley, Banse, Abell and Facey,* Rutland, for Plaintiff-Appellee.

*Michael B. Clapp* of *Dinse, Allen & Erdmann,* Burlington, for Defendant-Appellant.

**Hill, J.** The defendant, Schleicher-Soper Architects (hereinafter referred to as the defendant), appeals from a judgment entered on a jury verdict rendered for the plaintiff.[1] We affirm.

The plaintiff, an architect, contracted with an owner of land in Fayston, Vermont, to design a 64-unit condominium project. After 28 of the units were completed, the owner began to encounter financial difficulties, and considered abandoning the project. The owner contacted the defendant, an architectural firm, about the possibility of improving the project's marketability and reducing its construction costs. The defendant analyzed plans and drawings made by the plaintiff, recommended some changes in the project and incorporated those changes into plans and drawings it prepared at the owner's request. The condominiums outlined in the defendant's plans were very similar in appearance to those designed by the plaintiff, but were smaller in size and less expensive to construct. After reviewing and approving the defendant's plans and drawings, the owner authorized the defendant to prepare more detailed plans. The owner provided the defendant with additional copies of the plaintiff's original plans and drawings

---

[1] The plaintiff's claims against all the defendants except Schleicher-Soper were dismissed by stipulation of the parties, and are therefore not before this Court on appeal.

for the project, so that the defendant's work product would be sympathetic to the details of the existing condominium units. The owner then informed the plaintiff that the project had been abandoned, and cancelled the contract with the plaintiff. The defendant and the owner subsequently entered into a contract making the defendant the architect of record for the remainder of the project.

After the project was completed, the plaintiff brought this suit against the defendant, claiming interference with the plaintiff's contract rights and conversion of the plaintiff's plans and drawings. After the defendant's motions for directed verdict were denied, the jury returned a verdict against the defendant on both counts. The defendant's motions for judgment notwithstanding the verdict and for a new trial were denied, and the defendant appealed to this Court from the judgment entered on the verdict.

The defendant claims that the trial court erred in denying the defendant's motions for directed verdict, for judgment notwithstanding the verdict, and for a new trial. Specifically, the defendant contends that: (1) the evidence does not support the verdict that the defendant improperly and intentionally interfered with the plaintiff's contractual rights; and (2) the plaintiff failed to prove damages, and the damages awarded by the jury were excessive as a matter of law.[2]

I.

When a party challenges the sufficiency of the evidence presented at trial, this Court will review that evidence in the light most favorable to the prevailing party, excluding the

[2] The defendant also argues that the evidence does not support a prima facie case of conversion. Specifically, the defendant argues that the contract between the plaintiff and the owner merely forbade use of the plaintiff's drawings on "other" projects; therefore, it authorized the owner to give the plaintiff's drawings to the defendant for use on this project. The defendant failed to raise this argument below, in its motions for directed verdict. Therefore, the defendant has waived its right to make the argument on appeal, and we will not address it. *English* v. *Myers*, 142 Vt. 144, 148, 454 A.2d 251, 253 (1982) ("issues not raised below will not be considered for the first time on appeal").

effect of any modifying evidence. *Quechee Lakes Corp.* v. *Terrosi*, 141 Vt. 547, 552, 451 A.2d 1080, 1083 (1982) ; *Giroux* v. *Lussier*, 127 Vt. 520, 522, 253 A.2d 151, 153 (1969). Thus, we must determine whether the evidence, when viewed in the light most favorable to the plaintiff, was sufficient to establish that the defendant wrongfully interfered with the plaintiff's contractual relationship with the owner.

This Court recognized the existence of the tort of interference with contractual relations in *Mitchell* v. *Aldrich*, 122 Vt. 19, 22, 163 A.2d 833, 835–36 (1960) ("Except for special justification, the law has long recognized liability against one who intentionally intrudes to disrupt an existing contract relation."), and in *Giroux* v. *Lussier*, 126 Vt. 555, 561–62, 238 A.2d 63, 67 (1967) ("There is no legal right . . . deceptively [to] invade the area of another's agreement. An outsider who does so for his [or her] own purposes may be held liable to the promisee who suffers from such intervention."). The elements of this tort are more completely set forth in § 766 of the Restatement (Second) of Torts:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Accord *Vermont National Bank* v. *Dowrick*, 144 Vt. 504, 481 A.2d 396 (1984). Thus, to be liable for interference with a contractual relationship, the defendant must have intentionally and improperly induced or caused the owner not to perform under its contract with the plaintiff. A review of the record in this case convinces us that the plaintiff presented sufficient evidence of intentional and improper inducement.

██ Intent to interfere with a contractual relationship exists if "the actor acts for the primary purpose of interfering with the performance of the contract, and also if he [or she] desires to interfere, even though he [or she] acts for some

other purpose in addition." Restatement (Second) of Torts § 766 comment j (1979). Intent also exists if the actor does not act with the desire to interfere with the contract but knows that interference will be substantially certain to occur as a result of his or her action. *Id.*

■■ At the first meeting between the defendant and the owner in this case, the defendant was told that the plaintiff was the designer of the project. The defendant was also given copies of the plaintiff's drawings before the defendant began its own drawings. Thus, the evidence showed that, before it began its drawings, the defendant either knew or had reason to know of the existence of the contract between the plaintiff and the owner. Knowledge of the existence of the contract is a prerequisite to being found liable for interfering with that contract. See Restatement (Second) of Torts § 766 comment i ("To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he [or she] is interfering . . . . [T]he actor does not induce or otherwise *intentionally* cause [the failure of another to perform under a contract] if he [or she] has no knowledge of the contract.") (emphasis added). Knowledge of the existence of the contract is not automatically the equivalent of intent to interfere with the contract. However, from the evidence produced in this case, a reasonable jury could conclude that the defendant knew its actions would interfere with the plaintiff's contract, since by preparing detailed plans and drawings, the defendant was providing the same services as those the plaintiff was to provide under the contract. The jury could also find intent from the fact that the defendant knew the project was experiencing financial difficulties, and the defendant's services were being offered at a cheaper cost than the plaintiff's services were to be provided under the terms of the contract.

■■ The plaintiff also presented sufficient evidence for the jury to find that the defendant "induced or otherwise caused" the owner not to perform under its contract with the plaintiff. Although it was the owner and not the defendant who

initiated their first contact, the owner had not yet decided, at that time, to terminate its contract with the plaintiff. The defendant then offered to perform architectural services for the owner at a price substantially below that charged by the plaintiff, and at a time when the owner's project was suffering from serious financial difficulties. The inducement required for the tort of interference with a contract need not rise to the level of coercion, threats, or compulsion. See Restatement (Second) of Torts § 766 comments h, m. The jury may find that inducement exists if the defendant's acts caused the owner not to perform its contract with the plaintiff. *Mitchell* v. *Aldrich, supra* (Court found that evidence of defendant's offer to purchase goods at a higher price than that called for under the plaintiff's contract to purchase the goods was sufficient to send question of defendant's inducement of seller not to sell to plaintiff to the jury).

■■ Finally, we think the plaintiff presented sufficient evidence to convince the jury that the defendant's actions were "improper." The defendant argues that the contract between the owner and the plaintiff was terminable at will, and that, under § 768(1) of the Restatement (Second) of Torts,[3] the defendant's interference with the contract was allowed competition and not improper interference. This Court has held, however, that "[p]rotection is appropriate against unjustified interference with reasonable expectancies of profit though the contract is terminable at will or unenforceable against the

---

[3] Section 768(1) of the Restatement (Second) of Torts provides, in pertinent part:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

promisor in an adversary proceeding." *Mitchell* v. *Aldrich, supra,* 122 Vt. at 23, 163 A.2d at 836. In addition, "there is no legal right . . . knowingly [to] invade the contract relation of others solely to promote the intervenor's financial interest." *Id.* at 25, 163 A.2d at 837. On the basis of our statements in *Mitchell* v. *Aldrich,* we reject the defendant's argument.

The defendant also argues that its interference was not improper because it merely rendered "honest advice" to the owner, which, it argues, is allowed under § 772 of the Restatement (Second) of Torts.[4] We think, however, that the plaintiff presented sufficient evidence for the jury to find that the defendant's actions went beyond mere "advice," and instead constituted architectural services. The defendant prepared sketches, plans and detailed drawings for the project. Therefore, we reject the defendant's argument.

## II.

The defendant also argues that the plaintiff failed to prove damages on the conversion claim, and that the jury's damage award on that claim was excessive as a matter of law. The defendant cites *O'Bryan Construction Co.* v. *Boise Cascade Corp.,* 139 Vt. 81, 424 A.2d 244 (1980), for the proposition that the plaintiff is entitled to recover only nominal damages for the value of the paper on which the plaintiff's plans were drawn. See *id.* at 88, 424 A.2d at 248 ("If a jury were to find that a conversion had taken place, the recovery would be limited to the value of the paper itself."). The defendant has taken our statement in *O'Bryan* out of context, and has interpreted it too narrowly. The statement was part of a discussion of the relationship between common law copyright and conversion. As we stated in *O'Bryan,* a cause of action for infringement of a common law copyright involves an allegation of wrongful

---

[4] Section 772 of the Restatement (Second) of Torts provides that:

One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

  (a)  truthful information, or

  (b)  honest advice within the scope of a request for the advice.

use of intangible intellectual property, and the measure of damages is the value of the ideas contained within that property. *Id.* In contrast, a cause of action for conversion involves an allegation of wrongful possession of the tangible embodiment of a work. *Id.* We think the correct measure of damages for conversion of architectural plans such as the plaintiff's is the cost to the architect of producing those plans. See *MacMillan Co.* v. *I.V.O.W. Corp.*, 495 F. Supp. 1134, 1147 (D. Vt. 1980) (measure of damage to contractor whose design plans for construction of addition were used by shopping center owner without contractor's permission was cost incurred in developing the plans); 89 C.J.S. *Trover & Conversion* § 197 (measure of damages for conversion of a model is its cost of production). The plaintiff in this case produced evidence of the time and expense involved in producing the drawings, including the cost of paying a draftsperson to prepare the drawings. We conclude that the damages awarded by the jury for the value of the drawings were not excessive.

*Affirmed.*