## Nicholas Economou v. Wesley Carpenter, John Pierce, Costes Economou

[ 207 A.2d 241 ]

December Term, 1964

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed February 2, 1965

*Lisman & Lisman* and *Eric A. Schuppin* for plaintiff.

*Joseph S. Wool* for defendant Economou.

**Holden, C. J.** Before the present controversy developed, the plaintiff Nicholas Economou and his brother, the principal defendant Costes Economou, were associated in a farming operation, conducted as a corporate enterprise, C. Economou Farm, Inc. The plaintiff served as the farm manager and he and his wife lived on the farm.

In the month of April 1960, the brothers came to a parting of the ways. A written agreement was executed to accomplish a financial settlement. This agreement left the defendant Costes in full and complete control of the farm.

The plaintiff and his wife took up residence in a small apartment in Burlington, making it impossible for him to take all of his personal property and other belongings with him when he vacated the farm during the first week of May. Accordingly, a ram and some sheep, household furnishings and some farm tools, appliances and a quantity of lumber were left behind. The household furniture and personal effects were locked in a back room of the farm house.

This situation was communicated to the defendant Carpenter who was employed on the farm. He assured the plaintiff that the property would be safe and properly protected.

The defendant Pierce succeeded the plaintiff as farm manager. Shortly after this, the plaintiff returned to the farm to obtain the personal property he had left behind. Pierce called his superior, the defendant Costes, who instructed him not to turn the property over to the plaintiff until his brother had surrendered certain cattle registration records.

By letter of May 18, 1960, the plaintiff received instructions from defendant Costes' attorney to deliver the cattle registration papers and to remove the sheep and his household equipment which had been left at the farm. The plaintiff returned to the farm and was allowed access to obtain the registration certificates. These papers were received by the defendant Pierce. However, when the plaintiff returned a second time with a truck to remove his property, he was advised by Pierce that he had orders not to release the property. The sheep and ram were subsequently sold by Pierce at the defendant's direction. The other property remained on the farm.

Following these events, this action for conversion was brought. The facts thus stated are taken from the evidence presented in support of the plaintiff's claim. The jury discharged the defendants Pierce and Carpenter from liability, and fixed responsibility on Costes Economou alone. Since he is the sole appellant, we refer to him as the defendant. His appeal assigns error to the denial of his motion for a directed verdict and to the court's refusal to enter judgment in his favor notwithstanding the verdict against him. The appeal also challenges the instructions to the jury by way of the appellant's exception to the court's failure to charge "that conversion in the sense of the law of trover involves something equivalent to an affirmative act as contrasted with a mere nonfeasance and further excepts to the Court's failure to give the jury a definition of the meaning of an affirmative act and nonfeasance."

The errors claimed are related. The motion for a directed verdict and for judgment *non obstante verdicto* are similarly directed to the proposition that the evidence fails to show any affirmative act on the part of the defendant Costes Economou legally capable of rendering him liable for conversion of the plaintiff's property.

The gist of the action of conversion was stated by Chief Justice Rowell in *C. H. Eddy & Co.* v. *Field,* 85 Vt. 188, 189, 81 Atl. 249. The opinion states ". . . in the sense of the law of trover, a conversion consists either in the appropriation of the property to the party's own

use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion and defiance of the owner's right, or in withholding possession from the owner under a claim of title inconsistent with his title." These essentials have been frequently restated in varied cases that have followed, including those upon which the defendant relies. *Vt. Acceptance Corp.* v. *Wiltshire,* 103 Vt. 219, 226, 153 Atl. 199; *Dansro* v. *Scribner,* 108 Vt. 408, 411, 187 Atl. 803; *Wetmore* v. *B. W. Hooker Inc.,* 111 Vt. 519, 18 A.2d 181.

■ These cases stress the importance of an overt act but dominion may be exercised over the property of another in exclusion and defiance of the owner's right to possession although he does nothing more than detain the property against the rightful owner's demand. *Sibley* v. *Story,* 8 Vt. 15, 18; *Stearns* v. *Houghton,* 38 Vt. 583, 587; *Dohorty* v. *Mudgett,* 58 Vt. 323, 325. It is more appropriate to say— that with the exception of conversion by demand and refusal, liability for conversion requires that the defendant commit an overt act in reference to the subject property. See, *Harper & James,* The Law of Torts, §2.9; Restatement Torts, §224; *Manley Bros.* v. *Boston & Maine Railroad,* 90 Vt. 218, 221-222, 97 Atl. 674.

■ Here the evidence establishes that the defendant obtained possession of the plaintiff's property by bailment. Possession, lawfully acquired, may develop into a wrongful detention if the bailee makes an unqualified refusal to deliver the property on demand of the person legally entitled to its possession. *Dohorty* v. *Mudgett,* supra, 58 Vt. at 325; *Rubin* v. *Huhn,* 229 Mass. 126, 118 N.E. 290, 291; 1 Restatement of Torts, §237; see also annotations, 61 A.L.R. 633, 129 A.L.R. 638.

■ The facts presented by the plaintiff enabled the jury to find a conversion of the sheep by the overt act of sale to a third person. *Swift* v. *Mosely,* 10 Vt. 208, 210; *Merrill* v. *Bullard,* 59 Vt. 389, 391. As to the remaining property the evidence justified a finding of conversion by demand and refusal. *Hudson* v. *Nute,* 45 Vt. 66, 68; *Dohorty* v. *Mudgett,* supra, 58 Vt. at 325.

The defendant's first refusal to surrender the property was qualified by the condition that the plaintiff release the cattle registration certificates. Whether this was a condition that the defendant could lawfully impose, we need not inquire. The evidence from the defendant Pierce was to the effect that he received the documents from the

plaintiff. Consistent with this compliance, the plaintiff made a second visit to the farm and again requested his property. The refusal which followed this request was unqualified and absolute. It was of such substance to permit the jury to find a wrongful detention, contrary to the trust imposed by the bailment, and in defiance of the plaintiff's right in the property.

The defendant would have this result avoided on the strength of his claim that he was not acting as an individual, but solely in his representative capacity, as an agent of the C. Economou Farm, Inc. Yet the defendant readily admitted at the trial that the other defendants, employees of his corporation, were under his direct control—that he had the final word and authority. There was convincing evidence that the refusal was directed by the defendant through telephone communication to his subordinate employee Pierce. This specific direction and dominant participation was sufficient to render the appellant liable, in the same manner as though he had personally refused the demand for the return of the property. *Dansro* v. *Scribner,* supra, 108 Vt. at 411 ; compare, *Parker* v. *Cone,* 104 Vt. 421, 425, 160 Atl. 246.

There was no error in the denial of the defendant's motion for a directed verdict. And the trial court was correct in refusing to grant the motion for judgment against the verdict returned by the jury.

The same legal considerations which support these rulings required the court to reject the request contained in the defendant's exception to the charge. The exception stated an abstract principle of law that was only partly correct. It ignored critical factors of particular importance in this controversy, namely conversion by a bailee resulting from demand and refusal. Since the rule stated in the exception failed to include an essential qualification applicable to the facts of this case, the trial court was at liberty to reject the request. This is especially true when compliance might have produced some misunderstanding by the jury. *Packard* v. *Quesnel,* 112 Vt. 175, 180, 22 A.2d 164.

One further question remains. The plaintiff, in moving for judgment on the verdict, requested the court to find that the action arose from the wilful and malicious act of the defendant and that the defendant ought to be confined in close jail on a certified execution as provided in 12 V.S.A. §3624. The court below denied the motion without specific findings.

The plaintiff urges that the certificate should issue as a matter of law from this court, citing *Cone* v. *Drohat,* 117 Vt. 101, 85 A.2d 498. It was there held that on the facts of that case, the conversion did constitute a wilful and malicious act and a certified execution was issued from the Supreme Court.

But the Drohat case was followed by *Gould* v. *Towslee,* 117 Vt. 452, 94 A.2d 416. After an exhaustive consideration of the statute, the Court concluded that a motion for certified execution under this section of the statute presented two separate questions, requiring independent adjudications. First, did the action arise from the wilful and malicious act or neglect of the defendant? Secondly, if so, ought the defendant be confined in close jail?

While the answer to the first question may sometimes be determined as a matter of law, as the Drohat case, adjudication of the question whether the defendant ought to be confined in close jail is entrusted to the trial court's judicial discretion. Since this Court had no original discretionary power in the matter, the cause was remanded for the limited purpose of adjudicating that single issue. *Gould* v. *Towslee,* supra, 117 Vt. at 467. Accordingly a remand is required here to dispose of the plaintiff's motion by specific findings of fact addressed to the question of whether a certified execution may properly issue.

*Judgment affirmed. Cause remanded for further proceedings on the motion for close jail execution, consistent with the views stated in the opinion.*