P.F. Jurgs & Company and David R. Coates,
Ronald R. Plante, Glen A. Wright and William M. Nicoll,
Individually v. Thomas O'Brien, Thomas Shortle,
O'Brien-Shortle Associates, P.C.

[629 A.2d 325]

No. 91-497

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 16, 1993
Motions for Reargument Denied June 1, 1993

*Thomas Z. Carlson* of *Langrock Sperry & Wool*, Burlington, for Plaintiffs-Appellants.

*Nancy Corsones* and *Cortland Corsones* of *Corsones & Corsones*, Rutland, for Defendants-Appellees O'Brien and O'Brien-Shortle Assocs.

*Edward R. Seager, P.C.*, Rutland, for Defendant-Appellee Shortle.

**Johnson, J.** The principal issue before the Court is whether defendants may be held liable for the tort of conversion, if defendants acted in good faith and without specific intent to deprive plaintiffs of property. We hold that they may, and affirm the judgment against defendant Thomas O'Brien, reverse the judgment in favor of defendants Thomas Shortle and O'Brien-Shortle Associates, and remand for entry and determination of damages.

The present controversy arose out of the dissolution of an accounting firm. The plaintiffs are P.F. Jurgs & Co., an accounting firm headquartered in Burlington, and certain named individuals who were partners of the firm. The defendants are Thomas O'Brien and Thomas Shortle, Rutland accountants, and

the firm they formed after separating from Jurgs, known as O'Brien-Shortle Associates, P.C. O'Brien joined Jurgs in 1983 by merging his own Rutland accounting firm with Jurgs. Following this merger, the office that previously had been O'Brien's became the Rutland office of Jurgs.

In the summer of 1987, Jurgs decided to merge with Peat Marwick, a national accounting firm. O'Brien chose not to become associated with Peat Marwick, but to re-establish his own accounting business in Rutland. In view of O'Brien's decision, Jurgs voted to terminate O'Brien without cause as a shareholder of Jurgs, a procedure authorized by the Jurgs shareholders' agreement. O'Brien began operating his office independently as of August 1, 1987. Thomas Shortle, who had been an employee in Jurgs' Rutland office for many years, became his partner.

At termination, O'Brien's financial interest in Jurgs was determined according to the shareholders' agreement and the addendum to that agreement, which he had signed in 1983 when his Rutland firm merged with Jurgs. It provided that a retiring shareholder would be paid a pro rata share of book value, plus the "earnings left to accumulate" account maintained on the books of the corporation for the shareholder. The addendum stated that references to book value and earnings left to accumulate, as defined in the agreement, "shall refer to those amounts as shown on the balance sheet for each respective office."

Jurgs took the position that O'Brien's share of the business depended on the book value of the Rutland office, and not on the book value of Jurgs as a whole. At termination on July 31, 1987, the Rutland office had a negative book value of $22,651.81. On this view, the value of O'Brien's stock was zero.

O'Brien contended that he was entitled to a share of the corporation as a whole, and that the meaning of the addendum to the shareholders' agreement was simply to set up "managerial accounting," an accounting system that would track the net profits of each office separately for internal purposes. He also claimed that the negative book value of the Rutland office was the result of overcharges by Jurgs for administrative expenses, such as payroll and other expenses of operation, and unfair charges for interest on advances made to keep the Rutland office afloat.

In 1988, Jurgs sued O'Brien for conversion and unjust enrichment, alleging that he unlawfully retained the assets of the Rutland office after the date of his termination, July 31, 1987. Jurgs later filed an amended complaint, naming Shortle and O'Brien-Shortle as defendants. O'Brien counterclaimed for the value of his twenty-five shares of stock, and for damages for breach of fiduciary duty by his former partners.

The trial court rejected all of O'Brien's theories and denied the counterclaim. It also found him personally liable on Jurgs' complaint for conversion and unjust enrichment for retention of the assets of the Rutland office. The judgment figure of $123,318 included the value, as of July 31, 1987, of the assets, including accounts receivable of $79,000 and work in progress worth $23,000, minus a small amount of accounts payable assumed by the Rutland office. The trial court awarded prejudgment interest of 12% from July 31, 1987 to the date of judgment and costs.

The trial court declined to hold Shortle liable, concluding that he had a good faith belief that any funds generated by the Rutland office prior to July 31, 1987, and subsequently deposited in the account of O'Brien-Shortle were the property of the Rutland office. The court found that Shortle was not a party to any of the agreements between Jurgs and O'Brien, and that Jurgs had not demanded that he forward any funds received by O'Brien-Shortle. The court also declined to hold O'Brien-Shortle liable because it was unable to determine what amounts actually received by the firm after July 31, 1987 were generated by Jurgs.

O'Brien appeals the court's purported failure to make findings sufficient to support conversion or unjust enrichment,[1] and the denial of his counterclaim; Jurgs appeals the court's failure to find liability against Shortle and O'Brien-Shortle.

## I.

## A.

We first consider the question of whether Jurgs was entitled to the assets it claims were converted. O'Brien contends that

---

[1] In light of our decision on conversion, it is unnecessary to reach plaintiffs' claim that defendants were unjustly enriched.

the trial court's findings are insufficient to support a conclusion that he converted assets belonging to Jurgs. He claims that Jurgs' personnel conceded in their testimony that he owned the assets of the Rutland office, and that conversion is therefore legally impossible. The evidence does not support this argument.

Jurgs' personnel agreed that O'Brien is entitled to the book value of the Rutland office. They testified that the calculation of book value involves a consideration of assets such as accounts receivable and work in progress, and with respect to O'Brien's share, the assets of the Rutland office are included in the calculation. O'Brien equates his entitlement to book value with ownership of the assets that make up book value, but his equation is incorrect.

When O'Brien merged with Jurgs, he purchased stock in the firm for the amount of the then current book value of his old firm. Thereafter, O'Brien no longer owned specific assets in the Rutland office, such as accounts receivable or furniture; rather, he owned stock for which the shareholders' agreement and addendum defined the method of valuation. Under that agreement, he was entitled to payment of the book value, earnings left to accumulate and any vested retirement benefits, calculated with respect to the Rutland office. At the time O'Brien was terminated, the Rutland office had a negative book value, that is, its liabilities were greater than its assets. O'Brien's equity in the corporation, as defined by the shareholders' agreement and addendum, was zero.

O'Brien did receive the benefit of the value of the assets in the calculation of his book value. But, by retaining actual control over the assets of the Rutland office after July 31, 1987, he retained property that belonged to Jurgs. Therefore, the court's findings were entirely consistent with conversion, and Jurgs had a right to the assets retained.

## B.

The remaining issue with respect to conversion is whether the trial court erred in refusing to find liability against Thomas Shortle and the new firm, O'Brien-Shortle.

Jurgs first contends that good faith and lack of knowledge as to the true owner of property is irrelevant to the tort of conver-

sion. Second, it points out that the assets retained by O'Brien, and for which he was found liable, are the same assets retained by Shortle and O'Brien-Shortle; if the trial court found conversion with respect to O'Brien, Jurgs argues, it was clearly erroneous not to find conversion as to the other defendants. We agree and reverse as to Shortle and O'Brien-Shortle.

▮ To establish a claim for conversion, the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title. *Economou v. Carpenter*, 124 Vt. 451, 453–54, 207 A.2d 241, 243 (1965). Conversion may also be committed by retention of the property after the owner's rightful demand. *Id.* at 454, 207 A.2d at 243. With the exception of conversion by demand and refusal, liability requires that a defendant commit an overt act with respect to the subject property. *Id.* The key element of conversion, therefore, is the wrongful exercise of dominion over property of another.

The three-part definition stated in *Economou* does not set forth the only ways in which conversion may occur. It simply gives guidelines for determining whether there was sufficient unauthorized interference with plaintiff's property interest to amount to conversion by an overt act of dominion. See Restatement (Second) of Torts § 244 comment b (1965). Conversion by demand and refusal is merely another method of demonstrating an unlawful act of dominion. *Wetmore v. B.W. Hooker Co.*, 111 Vt. 519, 524, 18 A.2d 181, 184 (1941); see also *O'Bryan Constr. Co. v. Boise Cascade Corp.*, 139 Vt. 81, 88, 424 A.2d 244, 247–48 (1980) (use of property in manner beyond scope of consent conferred may form basis of a conversion).

▮▮ Specific intent to convert, that is, knowledge that the property is owned by another, is not required for liability in tort. Restatement (Second) of Torts § 244. It follows that the converter's good faith belief in ownership of the property, or lack of knowledge as to its true ownership, is irrelevant. Section 244 of the Restatement (Second) reads:

> An actor is not relieved of liability to another for trespass to a chattel or for conversion by his belief, because of mistake of law or fact not induced by the other, that he
>
>   (a) has possession of the chattel or is entitled to its immediate possession, or
>
>   (b) has the consent of the other or of one with power to consent for him, or
>
>   (c) is otherwise privileged to act.

To the extent that good faith is a factor to be taken into consideration in the elements of conversion, see Restatement (Second) of Torts § 222A, it is relevant only to the question of whether the converter intended to exercise dominion over the property. See *Wetmore*, 111 Vt. at 523, 18 A.2d at 184 (loss of property through negligence does not make one liable for conversion).

Here, the assets in question became Jurgs' property when the firms merged in 1983. O'Brien and Shortle, on behalf of themselves and O'Brien-Shortle, committed overt unauthorized acts of dominion over the assets. Defendants' own testimony showed that they deposited receipts for work done prior to O'Brien's termination, that is, for work generated by Jurgs, into the account of O'Brien-Shortle. Shortle agreed that funds received from this work gave O'Brien-Shortle the benefit of cash flow it would otherwise have had to borrow.

Although the trial court believed Shortle's explanation as to why he thought the funds belonged to O'Brien, Shortle's good faith does not entitle him, or the partnership, to keep the money. A "knowing" conversion is not required. The cause of action alleged is not a crime; it is a civil action for the return of property that rightfully belongs to another. Thus, Shortle's mistake of fact or law with respect to the assets is irrelevant. See Restatement (Second) of Torts § 244.

■ Moreover, it was clearly erroneous for the trial court to find that it could not determine whether the amounts received by O'Brien-Shortle were actually generated by Jurgs. Findings of fact will be set aside only when they are clearly erroneous, with due regard given to the opportunity of the trial court to judge the credibility of the witnesses and the weight of the evidence. V.R.C.P. 52(a); *Cab-Tek, Inc. v. E.B.M., Inc.*, 153 Vt. 432,

434, 571 A.2d 671, 672 (1990). The court made a number of findings as to the damages owed by O'Brien to Jurgs for conversion of the assets. These amounts were submitted to the court through an exhibit prepared by Jurgs, which was based on a stipulation, and specifically valued assets as of July 31, 1987. Except for accounts receivable and work in progress, which were not yet paid, all of the other items were cash, prepaid expenses, furniture, or other items that were in hand. Amounts corresponding to the accounts receivable and work in progress were includable because O'Brien testified that the funds were received and would be deposited to the O'Brien-Shortle account after August 1, 1987. Indeed, it would be impossible for the trial court to find O'Brien liable for conversion of these funds unless it also believed that O'Brien received the money. In light of O'Brien's testimony that he was aware that funds received after August 1, 1987 were generated prior to that date, and Shortle's testimony that O'Brien-Shortle had the benefit of them, the trial court's finding to the contrary was clearly erroneous. The court should have concluded that Shortle and O'Brien-Shortle committed sufficient acts of unauthorized dominion over assets belonging to Jurgs to amount to conversion.

## II.

O'Brien also contends that the court erred in denying his counterclaim, and that the findings in support of the court's conclusions are clearly erroneous.

The principal issue on the counterclaim is the valuation of O'Brien's stock in Jurgs. O'Brien claims the calculation of his equity should be determined on a firm-wide basis, and not limited to the equity in the Rutland office. He contends the court erred in its interpretation of the shareholders' agreement and addendum when it found that the shareholders had agreed to value equity separately for each office. The trial court drew its conclusions from a consideration of the agreement and addendum, and "credible extrinsic evidence."

The agreement is clear on its face. By itself, it supports the trial court's conclusion that O'Brien's share was limited to the Rutland office. The shareholders' agreement, § 7.2(a) and (b), provided that a retiring shareholder would be paid his investment in common stock plus his pro rata share of the unap-

propriated retained earnings at the effective date of retirement (book value), and the "earnings left to accumulate" account maintained on the books of the corporation for the shareholder. The addendum, executed some months later by all of the shareholders, stated that the amounts referred to in § 7.2(a) and (b) of the agreement "shall refer to those amounts shown on the balance sheet for each respective office." The addendum then set forth a separate book value for each office.

The "credible extrinsic evidence" was consistent with the court's interpretation of the agreement. The court found that (1) Jurgs had offices in Burlington and in three other locations, including Rutland, Newport, and Lebanon, New Hampshire; (2) all of the offices kept separate books; and (3) when the Newport and Lebanon offices withdrew from Jurgs, they did not share in the book value of either the Rutland or the Burlington offices.[2]

The significance of the extrinsic evidence was that it showed a course of conduct inconsistent with O'Brien's claimed understanding of the shareholders' agreement and addendum, a course of conduct dating from the merger in 1983 through the separation in 1987 to which O'Brien had acquiesced since 1983. O'Brien contended that he was entitled to share in all of the assets of Jurgs, and that the addendum merely provided for separate "managerial" accounting, to calculate profit and loss for internal purposes, for each office. The court rejected O'Brien's testimony as not credible, and its determination is well supported by the evidence.

O'Brien argues that the court should not have admitted parol evidence because there was no ambiguity in the original agreement, and the court erred in labeling the addendum as a "clarification" of it. He also argues the addendum is invalid because it was a substantial modification of the agreement without consideration.

---

[2] O'Brien is correct that the Lebanon office was subject to additional and unique language covering dissolution in its shareholders' agreement. Notwithstanding that provision, which provided that Lebanon would keep its assets and liabilities upon dissolution, the Lebanon shareholders' interest in Jurgs was limited to the book value of the Lebanon office. At termination, the Lebanon shareholders did not receive a share of any profits from any other office of Jurgs.

■ We find no error in the trial court's admission of the parol evidence. Initially, it should be noted that although Jurgs was the party that offered parol evidence in its case in chief, and O'Brien who objected, Jurgs did not argue that the original agreement, with addendum, is ambiguous. Its position was precisely the opposite; it wanted the court to determine the issue solely from the documents. It was O'Brien who contended ultimately that the addendum is ambiguous. Indeed, the focus of O'Brien's testimony, and his entire theory of the case, is that the addendum means something other than what it appears to state plainly. As it was O'Brien who claimed ambiguity, he can hardly complain because the court admitted extrinsic evidence in aid of its construction. See *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579–80, 556 A.2d 81, 84–85 (1988) ("Ambiguity will be found where a writing . . . supports a different interpretation," and it is appropriate, when inquiring into the existence of ambiguity, to consider the circumstances surrounding the making of the agreement).

Moreover, assuming arguendo that the addendum is not a clarification but a modification of the agreement, the modification is valid. O'Brien argues there was no meeting of the minds on the addendum, but the trial court rejected O'Brien's testimony on this issue as not credible. The court found O'Brien had long acquiesced in a course of conduct that supported the interpretation that book value, for purposes of calculating distributions upon termination, was determined separately for each office.

O'Brien also claims that consideration was lacking for the modification because it is not reciprocal. If the addendum modifies the agreement, however, each shareholder gave up a share in all of the branch offices except his own, and the consideration was mutual. See *Lloyd's Credit Corp. v. Marlin Management Servs.*, 158 Vt. 594, 598–600, 614 A.2d 812, 815–16 (1992) (detriment to the promisee is sufficient consideration for a contract and, once consideration is found, the contract will not be set aside because a party made an uneven bargain). Thus, no grounds exist on which to set aside the addendum.[3]

---

[3] O'Brien makes additional attacks on the findings, which we do not discuss, as the trial court's decision stands without these additional findings.

■ O'Brien's final assignment of error on the counterclaim is the court's failure to find that Jurgs' shareholders breached their fiduciary duty to him as a shareholder by imposing unfair administrative charges and by expelling him from the corporation. It is true that shareholders in a closely held corporation owe one another a fiduciary duty of good faith and loyalty, see *Solomon v. Atlantis Development, Inc.*, 147 Vt. 349, 356, 516 A.2d 132, 136 (1986) (interpreting Massachusetts law), but that duty was not breached here. The trial court found, with adequate support in the record, that the administrative charges were fair and reasonable and reflected services actually provided to the Rutland office by the Burlington office. The charges actually made were quite close to estimates given in advance to O'Brien to which he did not object. O'Brien's termination was lawful under the terms of the shareholders' agreement, which permitted a majority of the shareholders to expel another shareholder without cause. In short, no evidence supported a breach of fiduciary duty.

### III.

O'Brien argues that the trial court erred in awarding Jurgs prejudgment interest at 12% from July 31, 1987 to the date of judgment, a sum determined by the court to be $61,017.07. O'Brien contends that Jurgs could be awarded prejudgment interest only if Jurgs specifically sued for interest, and that because Jurgs made a demand for general relief only, it was not proper for the court to award interest from the date of conversion. O'Brien also challenges the rate of interest assessed by the court. We disagree.

■ ■ Prejudgment interest is a matter of right where damages are liquidated or readily ascertainable. *Newport Sand & Gravel Co. v. Miller Concrete Constr., Inc.*, 159 Vt. 66, 71, 614 A.2d 395, 398 (1992); see Reporter's Notes to 1981 Amendment, V.R.C.P. 54(a). The party entitled to such relief need not have demanded it in its pleadings. See V.R.C.P. 54(a). Prejudgment interest is to be calculated at the statutory legal rate, set at 12% per annum under 9 V.S.A. § 41a(a). The trial court, in its findings of fact, was able to readily ascertain the value of the amounts converted by O'Brien as of July 31, 1987, a sum it fixed at $123,318, and properly awarded prejudgment interest at the 12% statutory rate.

Finally, Jurgs conceded in its reply brief that "the rule and statute with respect to assessment of costs do not clearly authorize some of the costs assessed by the trial court," and relinquished assessment of those costs not clearly authorized. We hold that the costs of the court entry fee, of service, and of taking a deposition, an amount totaling $480.08, were clearly authorized. The remaining costs awarded to Jurgs are waived as conceded.

· *Judgment against defendant Thomas O'Brien affirmed, except that costs shall total $480.08; reversed as to defendants Thomas Shortle and O'Brien-Shortle Associates, P.C., and remanded for entry and determination of damages.*