Montgomery v. Devoid, No. S0027-03 CnC  (Norton, J., Feb. 16, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                          SUPERIOR COURT
Chittenden County, ss.:                               Docket No. S0027-03 CnC


THOMAS MONTGOMERY

v.

CARL L. DEVOID, JR., CARL L. DEVOID, SR.,
WAYNE M. DEVOID, LEONARD DEVOID,
ELIZABETH M. WITHAM, and THE LEONARD
R. DEVOID REVOCABLE TRUST


ENTRY

This matter concerns liability stemming from an alleged theft of about $80,000 from the Montgomery residence in Underhill, Vermont.  The plaintiff, Thomas Montgomery, claims that Carl L. Devoid, Jr., stole this money from his residence and distributed it to the other co-defendants. Montgomery sues all defendants for conversion and fraud, and he now seeks summary judgment on the conversion claim. Several defendants have filed cross-motions for summary judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). Here, the facts are partially disputed,[1] so the court views the facts in a light most favor

---

[1] Although Carl Jr. and Wayne Devoid dispute Montgomery's statement of undisputed facts, they do so after exercising their Fifth Amendment privilege against self-incrimination and declining to answer questions by deposition in discovery. For reasons the court will explain

below, the court will not permit Carl Jr. and Wayne to submit additional evidence regarding substantive matters about which they declined to testify in discovery. Accordingly, the court does not consider their factual disputes in its findings.

able to the non-moving parties in making the following findings for the purposes of this summary judgment order.

On May 20, 2002, Montgomery's home was broken into and the perpetrator stole $80,000 cash. On July 18, 2002, as part of his investigation of the theft, Detective Sergeant Thomas Nelson spoke with Wayne Devoid. Wayne stated that his brother, Carl Jr., was responsible for burglaries in the area over the past few months. He gave information that "appear[ed]" to relate to three burglaries, two of which occurred in Underhill. Wayne stated that Carl Jr. once came to his house and "showed him a shirt full of items and money he stole." This money included $77,000 cash, which they counted together. Wayne stated that Carl Jr. had told him that he stole the cash from two fire-proof safe boxes.

Wayne also explained what Carl Jr. had done with the money. He stated that Carl Jr. had paid off a $10,000 loan on their father Carl Devoid Sr.'s van. Wayne also stated that Carl Jr. had used the money to furnish his apartment with expensive items, such as a big screen television and had bought two vehicles, including a green Saturn car. Wayne stated that Carl Jr. had given him $14,000 cash, but Wayne had given the money back.

Det. Nelson followed up on Wayne's statements. First, he determined that the Montgomery's residence had been broken into, and the theft involved $80,000 from two small safes.

Det. Nelson also determined that Carl Jr. was the registered owner of a green 2000 Saturn sedan, which he acquired with a $7,000 cash payment at about 2 p.m. on May 20, 2002. Det. Nelson ascertained this information from the seller and from records from the Vermont Department of Motor Vehicles. DMV records also showed that Carl Jr. was the registered owner of a 1998 Jeep Cherokee, the title of which was transferred from Wayne to Carl Jr. Trooper Gary Scott of the Vermont State Police-Williston spoke with the prior owner of the Jeep, and she stated that on May 21, 2002, two men paid her $8,500 cash for the Jeep.

Det. Nelson also stated in his affidavit that Carl Sr. is the registered owner of a 1999 Ford Van, which he purchased from G. Stone Motors and financed through the Ford Motor Credit Company. Det. Nelson learned from speaking with the credit company that on July 3, 2002, the credit company received a payment of $10,931, which satisfied the lien on Carl Sr.'s van.

3

On July 26, 2002, police executed a search warrant of Carl Jr.'s residence, where they recovered coins from a separate home burglary, multiple motor vehicle titles, and new electronic items. In total, police learned from their search that Carl Jr. had purchased four vehicles since May 21. The police also recovered Carl Jr.'s property from Carl Sr., who had removed it from Carl Jr.'s residence shortly before the police executed their search warrant at Carl Jr.'s request. The police interviewed Carl Sr., who told them that he had paid off the loan for his van with a loan from his brother, Leonard Devoid, and Leonard's wife, Elizabeth Witham.

Following up on Carl Sr.'s statement, Det. Nelson interviewed Leonard and Witham in September. They stated that they had given Carl Sr. a $10,000 loan from cash they had in their house. They also stated that they had saved this cash for a vacation to Hawaii that they were not going to take. When Det. Nelson executed a search warrant of the bank accounts of Leonard and Witham, he found that they had each written a check to Carl Sr. for $5,000 and had each made cash deposits of the same amount, all within a week of May 20.

At her deposition, Witham testified that she and Leonard had lied to Det. Nelson. She explained that Carl Sr. had told them that he had earned $20,000 cash for siding and roof work, but he did not want to claim this money on his taxes. Witham stated that Carl Sr. told them he could avoid claiming the money if he could give it to them and they would write him two separate checks for $5,000. He would then use this money to pay off his truck loan. Witham stated that Leonard and her agreed to take the cash and write Carl Sr. the checks. Witham and Leonard did not benefit from the transaction; they merely converted cash into two checks. She also stated that they had lied to Det. Nelson about both the source of the cash and the vacation savings because they feared that Carl Sr. would go to jail.

Witham also testified that before Det. Nelson's interview but after they had written the checks and deposited the cash, Carl Sr. had told Leonard where the money came from. Leonard relayed this information to Witham. After Det. Nelson's interview, Witham contacted Carl Sr. and told him that they were angry about Carl Sr. potentially getting them into trouble.

Leonard passed away and was not deposed. Many of the assets belonging to Leonard and Witham, including Leonard's property at 288 Ponds Road in Hinesburg,

4

Vermont, were placed in the Leonard R. Devoid Revocable Trust, with Leonard as the trustee. This trust is a co-defendant in this matter.

Carl Sr., Carl Jr., and Wayne refused to answer most of the substantive questions that Montgomery's counsel asked at their depositions. Carl Sr. and Wayne specifically cited the Fifth Amendment privilege against self-incrimination; Carl Jr., pro se, simply stated "Next question" in response to most of counsel's questions.

The court first turns to the conversion claims against Witham, Leonard, and the trust. To establish a claim for conversion, Montgomery must show that these defendants appropriated his property to their own use and beneficial enjoyment, exercised dominion over it in exclusion and defiance of Montgomery's right, or withheld possession from Montgomery under a claim of title inconsistent with Montgomery's title. P.F. Jurgs & Co. v. O'Brien, 160 Vt. 294, 299 (1993). Montgomery need not show that the defendants held his money in bad faith or with specific intent to convert it, but defendants' good faith belief in the rightful ownership of Montgomery's money may be relevant to the question of whether they intended to exercise dominion over it. Id. at 299–300.

The Restatement (Second) of Torts provides factors courts should consider in determining whether an individual's interference with another's chattel is serious enough to warrant liability for conversion. These factors include (1) the extent and duration of the actor's exercise of dominion or control, (2) the actor's intent to assert a right inconsistent with the owner's right of control, (3) the actor's good faith, (4) the extent and duration of the resulting interference with the owner's right, (5) the harm done to the chattel, and (6) the inconvenience and expense caused to the owner. Restatement (Second) of Torts § 222A (1965).

Here, considering relevant factors above, the court denies Montgomery's summary judgment motion with regard to Witham, Leonard, and the trust, grants Witham's cross-motion for summary judgment on the conversion claim, and grants Leonard's cross-motion for summary judgment on the conversion claim. Even considering the facts in a light most favorable to Montgomery, the facts are insufficient to demonstrate that the dominion or control by Witham and Leonard rise to the level of conversion. Essentially, their transaction with Carl Sr. was a sham transaction, and they played the role of straw persons. In this position, they did not exercise any control at all, but merely took the money in one form and immediately sent it back in another. To the extent there was any

5

control on their part, it was fleeting. See id. § 229 cmt. b ("There may possibly . . . be a receipt of the chattel which is so temporary, trivial, or unimportant as not to amount to a conversion . . . ."). No evidence suggests they intended to exercise control over the $10,000 or had any bad faith in partaking in the transaction. Accordingly, they are not liable for conversion.

Montgomery argues that Witham, Leonard, and the trust are liable under a theory of civil conspiracy because they later declined to inform Det. Nelson about the actual source of the money. Civil conspiracy, however, requires that the parties to the conspiracy be aware of harm or wrongful conduct "at [the] beginning of combination or agreement." 16 Am. Jur. 2d Conspiracy § 51 (1998). To the extent that Witham or Leonard took any action intentionally to perpetuate the conversion of Montgomery's money, it was after the conversion had taken place. The court does not recognize a type of retroactive conspiracy, whereby Witham and Leonard could be liable merely because they were not forthright with the police after they concluded their fleeting and inadvertant involvement with the assets in question.

Turning to Carl Sr. next, Montgomery has submitted sufficient evidence to demonstrate that Carl Sr. was responsible for conversion to some degree. When deposed, Withram stated that after the transaction with Carl Sr., Carl Sr. told Leonard the source of the money and Leonard relayed this information to her. Although she did not specifically state what Carl Sr. had said, there is a reasonable inference, given the context of the statement, that Carl Sr. had told Leonard that the money was from Carl Jr.'s theft. Therefore, Carl Sr. knew that neither he nor Carl Jr. were the rightful owners of the $10,000 that Carl Sr. retained.

Withram's testimony about Carl Sr.'s statement is nonhearsay because both Carl Sr.'s statement and Leonard's statement to Witham about Carl Sr.'s statements are admissions of party opponents. V.R.E. 801(d)(2)(A). The fact that Leonard is deceased has no bearing on the nature of his statement as an admission. See Savarese v. Agriss, 883 F.2d 1194, 1200–01 (3d Cir. 1989). Therefore, Montgomery's evidence with respect to Carl Sr.'s involvement in conversion is admissible.

Montgomery and Carl Sr. contest the extent of Carl Sr.'s liability. Montgomery argues that Carl Sr. stands as a joint tortfeasor and is therefore jointly and severally liable for all damages (i.e., $80,000). Carl Sr. argues that he can be liable only for the amount

of money he received from Carl Jr. (i.e., $10,000). The court agrees with Carl Sr. Although several cases contain statements that appear to support joint and several liability for a co-defendant who receives property that another co-defendant converts, these cases address assets that were not divisible or, at least, not divided when they were transferred from one defendant to another. See, e.g., P.F. Jurgs & Co. v. O'Brien, 160 Vt. 294, 300 (1993) (holding partner and partnership liable in addition to other partner who actually converted assets because partner and partnership exercised dominion over all assets that other partner converted); Murray v. J & B Int'l Trucks, 146 Vt. 458, 466–67 (1986) (holding dealership jointly and severally liable with credit union that first repossessed plaintiff's single vehicle because dealership negotiated with plaintiff to re-sell vehicle and remained involved in transaction). Where a co-defendant exercises dominion over only a portion of property that another co-defendant converts, it makes far less sense to hold the co-defendant jointly and severally liable, unless the co-defendant assisted the other co-defendant in committing the tort. For instance, in Dansro v. Scribner, 108 Vt. 408 (1936), the Court held that a co-defendant was not jointly liable as a matter of law where the evidence merely showed that the co-defendant was involved with some of the converted chattels after the other defendants had converted them from the plaintiff. Id. at 413. The Court noted, however, that the co-defendant's connection with the converted chattels "may show that he was guilty of a subsequent conversion." Id.

Here, Carl Sr.'s beneficial use of and exercise of dominion over the $10,000 that Carl Jr. gave him demonstrates that he is liable for a subsequent conversion of that portion of the money that Carl Jr. converted. It does not demonstrate that he aided or assisted Carl Jr. in converting the other $70,000 from Montgomery. Montgomery has not provided any evidence demonstrating that Carl Sr. otherwise aided Carl Jr. in converting money from Montgomery or that Carl Sr. benefitted from or exercised dominion over other cash that Carl Jr. converted. Therefore, Carl Sr. is not jointly and severally liable for all of Montgomery's damages but is liable only for $10,000 in damages.

Moving on to the claim against Wayne, Wayne has not filed any response to Montgomery's summary judgment motion and he declined to answer any substantive questions by invoking the Fifth Amendment privilege against self-incrimination. The undisputed facts demonstrate his complicity in the conversion of $80,000. Det. Nelson's affidavit relays a number of Wayne's statements that he assisted Carl Jr. in counting the money converted from Montgomery. These statements are admissible as nonhearsay

7

admissions. V.R.E. 801(d)(2)(A). This evidence provides enough of a basis for the court to hold Wayne jointly and severally liable for $80,000 in damages under Montgomery's conversion claim.

Finally, turning to Carl Jr., Carl Jr. also declined to answer any substantive questions at his deposition.[2] He responded to Montgomery's summary judgment motion, however, by contradicting many of Montgomery's factual allegations (albeit with little evidentiary support for his contradictions) and by submitting an affidavit by Wayne that contradicted much of Det. Nelson's affidavit. The court will disregard Carl Jr.'s factual assertions, however. A party may not invoke the Fifth Amendment privilege against self-incrimination and then later attempt to introduce evidence on the same matters about which the party refused to testify. See, e.g., Amerifirst Savings Bank of Xenia v. Krug, 737 N.E.2d 68, 85–87 (Ohio Ct. App. 1999); Newsom v. State, 922 S.W.2d 274, 279–80 (Tex. Ct. App. 1996); Annotation, Dismissing Action or Striking Testimony Where Party to Civil Action Asserts Privilege Against Self-incrimination As to Pertinent Question, 4 A.L.R.3d 545, § 3 (1965) (collecting cases). Allowing such behavior turns the Fifth Amendment privilege against self-incrimination from a shield into a sword in civil litigation. Although the court draws no negative inferences from Carl Jr.'s refusal to testify, the court will not consider testimonial evidence that he or his brother submitted regarding the same matters following their Fifth Amendment refusals to participate in discovery.[3]

Therefore, considering the facts absent Carl Jr.'s allegations to the contrary, the court holds Carl Jr. liable for conversion. Det. Nelson's affidavit provides sufficient

---

[2] Carl Jr. was without counsel during the deposition, and merely responded to each question by stating, "Next question." He never explicitly cited the Fifth Amendment privilege against self-incrimination as grounds for his refusal to answer any substantive questions, but the court, along with Montgomery, assumes that the Fifth Amendment was the basis for his refusal to participate in discovery. The court will therefore not entertain motions to compel or to impose sanctions as if Carl Jr.'s behavior was a flat refusal to cooperate with discovery under Rule 37(a)(2) of the Vermont Rules of Civil Procedure.

[3] The court acknowledges that Carl Jr.'s lack of representation likely resulted in his failure to understand the consequences of his invocation of the Fifth Amendment privilege against self-incrimination. Accordingly, should Carl Jr. wish to revisit his decision not to

details of Wayne's statements, wherein Wayne informed the detective of details of his brother's burglaries. These statements are admissible as nonhearsay admissions under Rule 801(d)(2)(A) of the Vermont Rules of Evidence. They included details, such as the amount of money taken from two safes, that bear an uncanny resemblance to the theft of Montgomery's cash. Wayne's statements were also corroborated by police findings. In particular, the electronic items and two automobiles that Carl Jr. acquired after May 20, 2002, are consistent with Wayne's statements.[4] Thus, there is a reasonable inference from these facts that Carl Jr. is responsible for the conversion of $80,000 from Montgomery.

## ORDER

For the foregoing reasons, Montgomery's summary judgment motion is GRANTED in part and DENIED in part; Withram's cross-motion for summary judgment is GRANTED; Leonard's cross-motion for summary judgment is GRANTED; Carl Sr.'s cross-motion for summary judgment is GRANTED in part and DENIED in part; and Carl Jr.'s cross-motion for summary judgment is DENIED, consistent with this entry.

Dated at Burlington, Vermont, February 16, 2005.

---

participate in discovery, the court will entertain a motion to reconsider this ruling and to allow the parties to continue with discovery in the interests of fairness.

[4] Some of the evidence in Det. Nelson's affidavit regarding Carl Jr.'s acquisition of these items is inadmissible hearsay and cannot, by itself, support summary judgment. V.R.C.P. 56(e); Alpstetten Ass'n v. Kelly, 137 Vt. 508, 515–16 (1979). It is likely, however, that Montgomery would be able to produce this evidence in an admissible form, as through direct testimony from the declarants. And in any event, the court merely relies on this evidence to bolster admissible evidence that demonstrates Carl Jr.'s liability for conversion. Thus, even if the court sets aside the hearsay elements of Det. Nelson's affidavit, there is still no genuine issue of fact and summary judgment is appropriate.

9

\_\_\_\_\_/s/_____

Richard Walsh Norton    Judge